## MILLER MUSIC CORP. *v.* CHARLES N. DANIELS, INC.

No. 214. Argued February 24–25, 1960.—Decided April 18, 1960.

*Julian T. Abeles* argued the cause and filed a brief for petitioner.

*Milton A. Rudin* argued the cause for respondent. With him on the brief were *Lewis A. Dreyer, Jack M. Ginsberg* and *Payson Wolff.*

Mr. Justice Douglas delivered the opinion of the Court.

Petitioner, a music publisher, sued respondent, another music publisher, for infringement of petitioner's rights through one Ben Black, as coauthor, in the renewal copyright of the song "Moonlight and Roses." Respondent's motion for summary judgment was granted, 158 F. Supp. 188, and the Court of Appeals affirmed by a divided vote. 265 F. 2d 925. The case is here on a petition for a writ of certiorari which we granted. 361 U. S. 809.

The facts are stipulated. Ben Black and Charles Daniels composed the song and assigned it to Villa Moret, Inc., which secured the original copyright. Prior to the expiration of the 28-year term, Black assigned to peti-

tioner his renewal rights in this song in consideration of certain royalties and the sum of $1,000. Black had no wife or child; and his next of kin were three brothers. Each of them executed a like assignment of his renewal expectancy and delivered it to petitioner. These assignments were recorded in the copyright office. Before the expiration of the original copyright, Black died, leaving no widow or child. His will contained no specific bequest concerning the renewal copyright. His residuary estate was left to his nephews and nieces. One of the brothers qualified as executor of the will and renewed the copyright for a further term of 28 years. The probate court decreed distribution of the renewal copyright to the residuary legatees. Respondent then obtained assignments from them.

The question for decision is whether by statute the renewal rights accrue to the executor in spite of a prior assignment by his testator. Section 23 of the Copyright Act of 1909, 35 Stat. 1075, now 17 U. S. C. § 24, after stating that "the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years," goes on to provide:

"That . . . the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright."

An assignment by an author of his renewal rights made before the original copyright expires is valid against the world, if the author is alive at the commencement of the renewal period. *Fisher Co.* v. *Witmark & Sons,* 318 U. S. 643, so holds. It is also clear, all questions of assignment apart, that the renewal rights go by statute to an executor, absent a widow or child. *Fox Film Corp.* v. *Knowles,* 261 U. S. 326, so holds.

Petitioner argues that the executor's right under the statute can be defeated through a prior assignment by the testator. If the widow, widower, and children were the claimants, concededly no prior assignment could bar them. For they are among those to whom § 24 has granted the renewal right, irrespective of whether the author in his lifetime has or has not made any assignment of it. See *De Sylva* v. *Ballentine,* 351 U. S. 570. Petitioner also concedes—and we see no rational escape from that conclusion—that where the author dies intestate prior to the renewal period leaving no widow, widower, or children, the next of kin obtain the renewal copyright free of any claim founded upon an assignment made by the author in his lifetime. These results follow not because the author's assignment is invalid but because he had only an expectancy to assign; [1] and his death, prior to the renewal period, terminates his interest in the renewal which by § 24 vests in the named classes. The right to obtain a renewal copyright and the renewal copyright itself exist only by reason of the Act and are derived solely and directly from it.

---

[1] Spring, Risks and Rights in Publishing, Television, Radio, Motion Pictures, Advertising, and the Theatre (2d rev. ed. 1956), pp. 94–95; Ball, The Law of Copyright and Literary Property (1944), § 243; Ladas, International Protection of Literary and Artistic Property (1938), Vol. II, p. 772. But see Shafter, Musical Copyright (2d ed. 1939), p. 177.

We fail to see the difference in this statutory scheme between widows, widowers, children, or next of kin on the one hand and executors on the other. The hierarchy of people granted renewal rights by § 24 are *first,* the author if living; *second,* the widow, widower, or children, if he or she is not living; *third,* his or her executors if the author and the widow, widower; or children are not living; *fourth,* in absence of a will, the next of kin. True, these are disparate interests. Yet Congress saw fit to treat them alike. It seems clear to us, for example, that by the force of § 24, if Black had died intestate, his next of kin would take as against the assignee of the renewal right. Congress in its wisdom expressed a preference for that group against the world, if the author, the widow, the widower, or children are not living. By § 24 his executors are placed in the same preferred position, unless we refashion § 24 to suit other policy considerations. Of course an executor usually takes in a representative capacity. He "represents the person of his testator" as *Fox Film Corp.* v. *Knowles, supra,* at 330, states. And that normally means that when the testator has made contracts, the executor takes *cum onere.* Yet it is also true, as pointed out in *Fox Film Corp.* v. *Knowles, supra,* at 330, that "it is no novelty" for the executor "to be given rights that the testator could not have exercised while he lived." It is clear that under this Act the executor's right to renew is independent of the author's rights at the time of his death. What Congress has done by § 24 is to create contingent renewal rights. Congress has provided that, when the author dies before the renewal period arrives, special rules in derogation of the usual rules of succession are to apply for the benefit of three classes of people—(1) widows, widowers, and children; (2) executors; and (3) next of kin. We think we would redesign § 24 if we held that executors, named as one of the preferred classes, do not acquire the renewal rights, where

there has been a prior assignment, though widows, widowers, and children or next of kin would acquire them. Certainly *Fox Film Corp.* v. *Knowles, supra,* 329–330, states that what one of the three could have done, either of the others may do.  Mr. Justice Holmes speaking for the Court said:

"No one doubts that if Carleton had died leaving a widow she could have applied as the executor did, and executors are mentioned alongside of the widow with no suggestion in the statute that when executors are the proper persons, if anyone, to make the claim, they cannot make it whenever a widow might have made it.  The next of kin come after the executors. Surely they again have the same rights that the widow would have had."

The legislative history supports that view:

"Instead of confining the right of renewal to the author, if still living, or to the widow or children of the author, if he be dead, we provide that the author of such work, if still living, may apply for the renewal, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or, in the absence of a will, his next of kin. It was not the intention to permit the administrator to apply for the renewal, but to permit the author who had no wife or children to bequeath by will the right to apply for the renewal." [2]

The category of persons entitled to renewal rights therefore cannot be cut down and reduced as petitioner would have us do.  Section 24 reflects, it seems to us, a consistent policy to treat renewal rights as expectancies until the renewal period arrives.  When that time arrives,

---

[2] H. R. Rep. No. 2222, 60th Cong., 2d Sess., p. 15.  And see S. Rep. No. 1108, 60th Cong., 2d Sess., p. 15.

the renewal rights pass to one of the four classes listed in § 24 according to the then-existing circumstances. Until that time arrives, assignees of renewal rights take the risk that the rights acquired may never vest in their assignors. A purchaser of such an interest is deprived of nothing. Like all purchasers of contingent interests, he takes subject to the possibility that the contingency may not occur. For example, an assignment from an author and his wife will be ineffective, if on his death another woman is the widow. Examples could be multiplied. We have said enough, however, to indicate that there is symmetry and logic in the design of § 24. Whether it works at times an injustice is a matter for the Congress, not for us.

*Affirmed.*

Mr. Justice Harlan, whom Mr. Justice Frankfurter, Mr. Justice Whittaker, and Mr. Justice Stewart join, dissenting.

I cannot agree to this decision, by which the assignee of an author's renewal rights in a copyrighted work is deprived of the fruits of his purchase—a purchase which, we must assume, was made in good faith and for a consideration fairly agreed upon.[1] While, for all that appears, the author in this case may not have contemplated the defeat of his assignment, the effect of the decision is to enable an author who has sold his renewal rights during his lifetime to defeat the transaction by a deliberate subsequent bequest of those rights to others in his will.

An assignee of renewal rights *inter vivos* cannot of course protect himself from such an unjust result by

---

[1] Today even less than when *Fisher Co.* v. *Witmark & Sons,* 318 U. S. 643, was decided, "can we be unmindful of the fact that authors have themselves devised means of safeguarding their interests." *Id.,* at 657. More particularly there is no suggestion in this case that the sale of these renewal rights was in any way improvident.

obtaining an assignment from the author's executor, who acquires his status as such only upon the author's death. Nor can he with any assurance of success seek to secure assignments from everyone who might be expected to be the fortunate legatee. In consequence, the efficacy of a good-faith attempt to accomplish a lasting conveyance of renewal rights may hereafter depend on whether a particular transaction, under the law of whichever State may ultimately govern the matter, will be deemed a contract to make a will and given effect as such. The resulting uncertainties as to construction, validity, and mode of enforcement of such transactions under the laws of the various States need hardly be spelled out. A result so unjust and unsettling, and which indeed may impair the marketability of an author's renewal rights, should be reached only if clear statutory language or evident legislative purpose fairly compels it. Far from resting on such considerations, this decision is supported only by a parlaying of an ill-considered "concession" of counsel with an exaltation of literal "symmetry and logic" (*ante,* p. 378) over what it seems to me a more penetrating inquiry into congressional aims would have revealed.

For convenience I quote the Copyright Act, 17 U. S. C. § 24, again:

"That . . . the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright."

On its face, the section manifests no intention to deal with the problem of priority of rights as between an assignee and the persons named in the section. The discussion in the House Report quoted by the Court, *ante,* p. 377, likewise shows no advertence to the question, and we are referred to no other significant legislative history on this score. Hence, we must resolve the matter in light of the purpose disclosed by the structure of the provision.

On this basis we do not write upon a clean slate. In *Fisher Co.* v. *Witmark & Sons,* 318 U. S. 643, it was argued that the renewal provisions of the statute demonstrated a congressional determination "to treat the author as though he were the beneficiary of a spendthrift trust." Brief for petitioners, No. 327, O. T. 1942, p. 36. The Court, finding no support in the evolutionary history of the legislation and its structure, rejected that view, and held that an author could, during the original term of his copyright, validly assign his right to apply for the renewal, and that having done so he could not, upon the arrival of the renewal year, himself claim that right. The Court seems to regard that case as entirely inapplicable in a situation where, as here, the author has not survived the beginning of the renewal year. But had the statute conferred renewal rights on "the author, if still living, or if the author be not living, on his executors or administrators," I have little doubt that the *Fisher* decision would control this case and require its reversal. The important question, then, is to determine the extent to which Congress has seen fit to depart from the ordinary rules of succession. In reaching its conclusion, the Court has, I think, overlooked critical distinctions between the different clauses of the statute.

The evolution of § 24 was exhaustively described and analyzed in *Fisher,* and need not be recanvassed here. See also *De Sylva* v. *Ballentine,* 351 U. S. 570, 574–576.

Briefly, the clause regarding widows, widowers, and children originated with the 1831 Act, 4 Stat. 436, while that dealing with executors and next of kin was added in 1909, 35 Stat. 1081. The retention, at that latter date, of the provision for widows, widowers, and children, and its position in the amended statute, can only be taken as expressive of a desire to regard them, in the words of the Court, as a "preferred class," and to ensure that the author could not by bequest confer on another the benefits of the renewal term. Cf. *De Sylva* v. *Ballentine, supra,* at 582. For it would indeed be anomalous to say that an author could convey for a consideration during his lifetime what he is not permitted to bequeath at death. Hence I agree that the provision for a "compulsory bequest," *ibid.,* to the author's widow and children should be held to bar effective assignment of renewal rights as against them.

But I cannot perceive the applicability of this reasoning to the executor. There is simply no warrant for regarding him as in any way one of a "preferred class." The executor himself manifestly could not have been the object of such congressional solicitude, since he takes nothing beneficially, but only as a fiduciary for those benefited by the will. As to the latter, a legatee can be any person, corporation, or association capable of taking property by bequest. Surely we cannot infer legislative concern over the protection of the interest of whosoever, of the large indeterminate class of potential legatees, should prove in fact to be chosen by the author. The evident purpose of the clause regarding executors was merely "to permit the author who had no wife or children to bequeath by will the right to apply for the renewal." H. R. Rep. No. 2222, 60th Cong., 2d Sess., p. 15. The Court gave full effect to that purpose in *Fox Film Corp.* v. *Knowles,* 261 U. S. 326, when it held that an executor acquired the right to apply for renewal, even though the author's death

occurred prior to the renewal year, when the author himself first could have renewed his copyright. It goes beyond that purpose, and beyond anything at issue in *Fox Film,* to read into the statute a desire to protect legatees from the claims of an assignee of the author.

The Court's treatment of the rights of an author's next of kin is especially curious. With no more authority than what appears to me to have been a demonstrably unnecessary "concession" of counsel,[2] the Court regards it as "clear" that the next of kin take over an assignee. From this dubious premise, the Court reasons that the executor, being thus surrounded in the "hierarchy of people granted renewal rights" by persons whose rights are superior to those of an assignee, must be "placed in the same preferred position." This reasoning, I submit, ignores the legislative purpose evidenced by the statute. There is no basis whatever for supposing that next of kin were sought to be protected from loss of rights arising out of the author's acts, in the sense that widows and children were. For the obvious fact is that under the statute next of kin, though related—albeit often distantly[3]—to the author, may be deprived of any interest in the renewal rights by a bequest of those rights by the author to another—even to one who is a total stranger.

It is thus apparent that Congress had no intention of protecting next of kin from defeasance of their expectancy.

---

[2] It is not difficult to understand why a publisher would be content with a rule preferring the next of kin—who can ordinarily be determined with reasonable accuracy during the assignor's lifetime, and from whom an assignment can often be purchased, as indeed was done in this instance—and at the same time regard application of a similar principle to the executor as unworkable. Yet it need hardly be said that such practical considerations do not relieve this Court of the duty of construing the statute for itself.

[3] Our reference in the *De Sylva* case, *supra,* at 582, to the "family" of the author was of course to the immediate family, the spouse and children, and not to all those related, however remotely, to the author.

Its purpose was more limited. Having determined that, despite an author's death without a surviving spouse or child prior to the renewal year, his work should not pass into the public domain, Congress sought to ensure that the failure of the author to leave a will would not bring this result about. The decision to give the renewal rights directly to the next of kin, rather than to an administrator, may well have been due to a desire to save authors' estates—which not infrequently might contain no other asset of substance—the expense of going through administration. Be that as it may, it seems to me abundantly clear that the result now reached by the Court was never intended.

To construe the statute as I have is not to "refashion" it, but only to appraise the competing claims of the author's assignee and those named in § 24 in light of the policy indicated by the manner in which the various interests involved are dealt with by the statute. The "symmetry and logic" of the provision is a dynamic, not a static or syntactical, symmetry and logic. Consistently with *Fisher*, the assignment is given effect as against those whose claims must rest on the voluntary decision of the author to benefit them; as to the surviving spouse and children, however, the legislative care taken to make their rights independent of the author's desires leads to a contrary result. It is only to that extent that Congress has departed from the ordinary rules of succession, in accord, it may be noted, with modern legislative trends precluding disinheritance of widows and children. We should not, by failing to heed the limits of that departure, foster an unjust and disruptive result. By undermining the sales value of renewal rights at the expense of the author and his immediate family this decision impinges on the very interests which the Copyright Act was designed to protect.

I would reverse.