SWEET MUSIC, INC., a California corporation, Plaintiff,

v.

MELROSE MUSIC CORP., a New York corporation, and Broadcast Music, Inc., a New York corporation, Defendants.

Civ. No. 136–60.

United States District Court
S. D. California,
Central Division.

Dec. 7, 1960.

Gifford, Wyse, Darby & Franciscus, by Mortimer G. Franciscus, Pasadena, Cal., for plaintiff.

Pasarow & Spiegel, by Irwin O. Spiegel, Hollywood, Cal., for defendant Melrose Music Corp.

Kaplan, Livingston, Goodwin & Berkowitz, by Bayard F. Berman, Beverly Hills, Cal., for defendant Broadcast Music, Inc.

MATHES, District Judge.

Plaintiff seeks damages and injunctive relief for alleged copyright infringement, and a declaratory judgment under 28 U.S.C. § 2201 as to rights and duties, arising out of the renewal copyright of the musical composition "Fight On", the official "fight song" of the University of Southern California.

As to the copyright infringement claim, Federal jurisdiction is asserted under 28 U.S.C. § 1338(a). Diversity jurisdiction is invoked as to the claim for declaratory relief. 28 U.S.C. § 1332; Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194. In their answers to the complaint, defendants have interposed counterclaims for a declaratory judgment as to ownership of the renewal copyright.

The facts are not in dispute and, as stipulated by the parties in the Pre-Trial Conference Order, are as follows. Prior to July 21, 1929, Milo A. Sweet and Glen Grant created the original musical composition "Fight On", comprised of music written by Sweet and lyrics written by both Grant and Sweet. This composition was regularly published with notice of copyright, and timely claim of copyright was registered in the Copyright Office by the predecessor of defendant Melrose Music Corp., acting as agent for both Grant and Sweet.

Later in 1929, the co-authors entered into an agreement transferring to the predecessor of defendant Melrose Music Corp. the "exclusive band, orchestra, folio and sheet music publishing rights of the said composition for the term of

present copyright and all renewals thereof", in consideration of certain specified royalty payments.

Some ten years later, in 1939, the co-authors agreed to make timely application for renewal of the copyright at the expiration of the original 28 year term, and to "sell, assign, transfer and deliver" to the predecessor of defendant Broadcast Music, Inc., all of their renewal rights, in return for royalties to be paid during the renewal period.

Composer Grant died in 1941, leaving a widow. In 1955 Sweet and Grant's widow, after obtaining renewal of the copyright, purported to assign the renewed copyright to plaintiff, who took the assignment with full knowledge of the 1929 and 1939 agreements. Defendant Broadcast Music, Inc., has since assigned to Meridian Music Corp. any interest it may have in the renewed copyright, excepting "public performance" rights.

■ Plaintiff contends here that it is sole and exclusive owner of the renewed copyright because Grant, co-author of the joint work, died prior to renewal. The gist of plaintiff's argument is that inasmuch as Grant died prior to renewal, the 1929 and 1939 transfers of the renewal interests to defendants' predecessors are of no legal effect, and hence both Sweet and Grant's widow were free in 1955 to assign to plaintiff. In particular, plaintiff urges that the fact that both co-authors executed the 1929 and 1939 agreements raises an implied condition that both owners must survive until renewal of the copyright, otherwise the pre-renewal assignments fail; that to hold the pre-renewal assignments partly valid would impose upon the parties contracts they did not make; and hence that, as defendants are not bound by the 1929 and 1939 agreements because Grant's death rendered them incapable of being fully performed, plaintiff should not be bound by surviving-author Sweet's covenants therein made.

Defendants concede that their claims to Grant's interest in the copyright renewal ceased at his death, and that Grant's right to renew passed to his widow free and clear of all prior agreements, pursuant to § 24 of the Copyright Act. [17 U.S.C. § 24.] Defendants also concede that plaintiff acquired Grant's right by assignment from Grant's widow. But defendants contend that they nonetheless hold title to the renewed copyright as tenants-in-common with plaintiff, by virtue of the 1929 and 1939 agreements. Specifically, defendants contend that both pre-renewal agreements, while not binding upon Grant's widow, are still binding upon Sweet, who survived until time for renewal of the copyright, and are binding as well upon Sweet's transferees with notice, including plaintiff.

■ The right of renewal of a copyright has been held to be in the nature of an expectancy. Miller Music Corp. v. Charles N. Daniels, Inc., 1960, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804; Rose v. Bourne, Inc., D.C.S.D.N.Y.1959, 176 F. Supp. 605, affirmed 2 Cir., 1960, 279 F.2d 79, certiorari denied, 81 S.Ct. 170. Consequently, if the author dies before time for renewal of a copyright, any *inter vivos* assignment of renewal rights by the deceased author is of no force, and the right to renew then devolves upon those classes of persons designated in § 24 of the Copyright Act. Miller Music Corp. v. Charles N. Daniels, Inc., supra, 362 U.S. at page 375, 80 S.Ct. 792.

In Fisher Music Co. v. M. Witmark & Sons, 1943, 318 U.S. 643, 63 S.Ct. 773, 779, 87 L.Ed. 1055, involving a fact situation quite similar to that at bar, the Court held that rights to the renewal of a copyright were assignable in advance of accrual. There the renewal rights had been assigned during the period of the original copyright. After the copyright was renewed, the assignor's successor sought to be relieved from the pre-renewal assignment, contending that the Copyright Act does not countenance an assignment of renewal rights in advance of accrual. But the Court found neither specific statutory language nor "compelling considerations of policy" to invalidate an assignment made in advance

of accrual of the renewal right, and held the pre-renewal assignment valid where, as here, the assignor survived the fruition of the expectancy.

Plaintiff seeks to distinguish the Fisher case upon the ground that both co-authors in the case at bar executed the pre-renewal agreements, whereas in Fisher only one of three co-authors signed. From this circumstance plaintiff argues that, since both authors who executed the pre-renewal agreements in the case at bar did not survive until the renewal right accrued, neither should be held bound.

Section 28 of the Copyright Act provides that: "Copyright secured under this title or previous copyright laws of the United States may be assigned * * *." 17 U.S.C. § 28. The Supreme Court, citing the Fisher case, has declared that: "An assignment by an author of his renewal rights made before the original copyright expires is valid against the world, if the author is alive at the commencement of the renewal period." Miller Music Corp. v. Charles N. Daniels, Inc., supra, 362 U.S. at page 375, 80 S.Ct. at page 794. To hold then that the entire assignment is of no force, merely because part of an otherwise valid assignment fails due to the death of one of the assignors, would be to ignore the policy clearly expressed by the Congress in § 28 of the Act and elucidated by the Supreme Court in Fisher Music Co. v. M. Witmark & Sons, supra, 318 U.S. 643, 63 S.Ct. 773.

■ Plaintiff's argument overlooks the fact that the renewal provisions of § 24 of the Act [17 U.S.C. § 24] were designed to protect only the classes of persons specifically designated therein, and not a surviving co-author. If Sweet and Grant each had executed separate assignments of their respective interests in the renewal copyright, it is beyond argument that both Sweet and plaintiff, as his transferee with notice, would be bound under the rationale of the Fisher case. The mere circumstance that they happened to join in the same assignment agreement should not dictate a different

result in the face of the policy declared in § 28 of the Act.

■ There remains to consider plaintiff's point that, irrespective of § 28 of the Act, defendants could not be obligated to perform their part of the bargain due to the death of Grant, so plaintiff should not be bound since, as the argument goes, there is a lack of mutuality of remedy.

The so-called rule of "mutuality of remedy" has been criticized extensively. Ames, Mutuality in Specific Performance, 3 Col.L.Rev. 1 (1903); Cook, The Present Status of the "Lack of Mutuality" Rule, 36 Yale L.J. 897 (1927); Stone, The Mutuality Rule in New York, 16 Col.L.Rev. 443 (1916); Walsh, Mutuality of Remedy in the Federal Courts, 36 Geo.L.J. 220 (1948). More than a generation ago Williston observed that "the rule, if taken literally, is in conflict with numerous decisions, and its broader statements are falling into discredit." 5 Williston, Contracts § 1433 at 4008 (rev. ed. 1937). Corbin has characterized it as highly "unsound". 5 Corbin, Contracts § 1180 et seq. (1951). And it has been expressly rejected by the restatement, Contracts § 372(1) (1932).

Although the rule still clings to life in some states by grace of statute or judicial fiat, the decision of the Court of Appeals of New York in Epstein v. Gluckin, 1922, 233 N.Y. 490, 135 N.E. 861, is persuasive that it has long been without general validity. There Judge [later Mr. Justice] Cardozo wrote for the Court:

"If there ever was a rule that mutuality of remedy existing, not merely at the time of the decree, but at the time of the formation of the contract, is a condition of equitable relief, it has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule to-day. * * * What equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppres-

sion either to plaintiff or to defendant." 135 N.E. at page 862.

Clearly, then, the premise on which plaintiff rests the "mutuality" argument must fall. By their claims at bar defendants in effect assert that they remain bound by the assignment agreements. They cannot rely on the assignment agreements and at the same time refuse to perform their obligations thereunder.

■ Turning now to the respective rights and duties of the parties, defendants urge that they are entitled to a three-fourths interest in the renewal copyright, and that plaintiff is entitled to only a one-fourth interest. This claim of defendants rests upon the stipulation that: "Milo A. Sweet and said Glen Grant were the joint composers of said musical composition, Milo A. Sweet having written the music and Milo A. Sweet and said Glen Grant together having written the lyrics". From this defendants appear to assume that Sweet wrote half the words and all the music, and that this assumed contribution entitled Sweet to three-fourths of the royalties.

No facts are in evidence indicating that the ownership was intended as other than an undivided one-half interest for each of the co-authors. The 1939 assignment, providing for advance royalties to be paid to Sweet and Grant, states that these royalties are "to be divided equally between them". Moreover, looking to the analogy of tenants-in-common generally, the long-settled rule is that "if their shares are not fixed in the deed or will creating the cotenancy, they take in equal shares". 2 American Law of Property § 6.5 (Casner ed. 1952).

Although it appears that neither the 1929 nor the 1939 assignment was recorded, plaintiff took from co-author Sweet with full knowledge of the existing agreements with defendants' predecessors. Hence Sweet's 1955 post-renewal assignment in favor of plaintiff is of no legal effect.

The conclusion then must be that the ownership rights in the renewal copyright of the song "Fight On" are as follows:

(1) plaintiff is the owner of a full undivided one-half interest in the renewal copyright, by virtue of the April 8, 1955, assignment from the widow of Glen Grant;

(2) defendant Melrose Music Corp. is the owner of an undivided one-half interest in the "band, orchestra, folio and sheet music publishing rights", by virtue of the 1929 assignment from Milo A. Sweet; and

(3) Meridian Music Corp., as assignee of defendant Broadcast Music, Inc., is the owner of an undivided one-half interest in the residue of the renewed copyright, subject to the reservation by Broadcast Music, Inc. of the so-called "public performance" rights.

■ A co-owner may not maintain an action against another co-owner for copyright infringement, so plaintiff's claim for infringement must be denied. Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 1955, 221 F.2d 569, modified on other grounds 2 Cir., 1955, 223 F.2d 252; Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 1946, 161 F.2d 406, certiorari denied 1947, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837; Edward B. Marks Music Corporation v. Jerry Vogel Music Co., 2 Cir., 1944, 140 F.2d 266; Cary, Joint Ownership of Copyrights 100 (Copyright Law Revision, Study No. 12 Subcommittee on Patents, Trademarks, and Copyrights of the Committee on the Judiciary of the United States Senate, 1960).

What has been said may serve as findings of fact and conclusions of law. Fed. R.Civ.P. 52(a), 28 U.S.C. The parties shall bear their own costs, and defendants may serve and lodge with the Clerk a proposed judgment pursuant to Local Rule 7 within five days.