**Cathy Yvonne STONE, an Individual, Plaintiff–Appellant,**

v.

**Hank WILLIAMS, Jr., Billie Jean Williams Berlin, Chappell Music Company, a Division of Chappell & Co., Inc., a Delaware Corporation, Aberbach Enterprises, Ltd., a New York Corporation, Acuff–Rose Opryland Music, Inc., a Tennessee Corporation, Milene–Opryland Music, Inc., a Tennessee Corporation, Wesley H. Rose and Roy Acuff, Individually and as Trustees in Liquidation for Stockholders of Fred Rose Music, Inc., and Milene Music, Inc., Fred Rose Music, Inc., a Tennessee Corporation, and Milene Music, Inc., a Tennessee Corporation, Defendants–Appellees.**

No. 732, Docket 88–7860.

United States Court of Appeals, Second Circuit.

Rehearing Filed Sept. 7, 1989.

Decided Dec. 5, 1989.

Milton A. Rudin, Beverly Hills, Cal. (Joseph L. Golden, Rudin & Appel, Beverly Hills, Cal., Kenneth E. Warner, Coblence Warner Hamilton & Smith, New York City, of counsel), filed a brief for plaintiff-appellant.

Alan L. Shulman, New York City (Robert J. Warner, Richard H. Frank, Jr., W. Michael Milom, Christian A. Horsnell, Silverman, Shulman & Slotnick, New York City, of counsel), filed a brief for defendants-appellees, Hank Williams, Jr., Wesley H. Rose, Roy Acuff, Fred Rose Music, Inc. and Milene Music, Inc.

Thomas R. Levy, New York City, filed a brief for defendants-appellees, Billie Jean Williams Berlin, Chappell Music Company and Aberbach Enterprises, Ltd.

Lawrence I. Fox, New York City (Stephen K. Rush, Dianna Baker Shew, Berger & Steingut, of counsel), filed a brief for defendants-appellees, Acuff–Rose Opryland Music, Inc. and Milene–Opryland Music, Inc.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

## OPINION ON PETITION FOR REHEARING

CARDAMONE, Circuit Judge:

Pursuant to an order entered August 24, 1989, granting her leave to file a petition for rehearing, Cathy Yvonne Stone petitions this panel under Fed.R.App.P. 40 for a rehearing. She had appealed from a judgment of the United States District Court for the Southern District of New York (Keenan, J.) granting summary judgment to defendants in an action plaintiff brought seeking her purported share of copyright renewal rights to songs composed by Hank Williams, Sr., her natural father. Defendants are the son and common-law wife of the late singer, and several individuals and corporations that are assignees of the copyrights to Hank Williams' songs. Judge Keenan ruled that plaintiff's claim was barred by laches. We affirmed the district court in an opinion dated April 21, 1989, *Stone v. Williams*, 873 F.2d 620 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989).

The petition for rehearing of the appeal is granted. The April 21st opinion and judgment of this Court are vacated, and the matter is remanded to the district court for further proceedings.

I

At the time of plaintiff's appeal before us, she also had pending an appeal to the Supreme Court of Alabama where she sought to have her father's estate opened and to obtain her proportionate share of that estate. The defendants on that appeal included Irene Smith (Hank Williams' sister and the administratrix of his estate at the time plaintiff's claim to the estate was originally decided) and Robert Stewart (Williams' attorney). In order to achieve that ultimate relief, Ms. Stone necessarily also petitioned the Alabama Supreme Court to set aside two orders entered in 1967 and 1968 by the Montgomery Circuit Court which, though acknowledging that Hank Williams was her natural father, declared that she was not an heir to his estate.

On July 5, 1989, the Supreme Court of Alabama reversed the trial court's award of summary judgment to defendants finding that they had intentionally, willfully and fraudulently concealed plaintiff's identity, existence, claim and rights as a natural child of Hank Williams, Sr. The court determined that defendants' fraud, along with other errors of law, presented sufficient grounds to set aside the 1967 and 1968 decrees that declared that plaintiff was not an heir to Williams' estate. This fraud, the court continued, excused plaintiff's delay in asserting her claim, and it held therefore that plaintiff had asserted her rights timely. It further found substantial evidence in the record that could indicate to a factfinder that defendants fraudulently conspired to keep certain facts relating to plaintiff's existence, identity and potential claim concealed from the courts of Alabama.

### A.

A brief review of some of the factual background is necessary to understand the present posture of the matter now before us. When the famous country and western singer Hank Williams died (a few days before plaintiff was born) his mother, Lillian Stone, legally adopted plaintiff. Hank Williams' sister, Irene Smith, had promised to care for plaintiff in the event that Lillian Stone was unable to. After Lillian Stone's death, Smith reneged on her promise, saying she wanted to avoid the "publicity and gossip" associated with the baby, and that it would be in the child's best interests to be put up anonymously for adoption. But a letter written earlier by Smith to attorney Stewart in 1954 suggests that Smith may have been motivated by more selfish reasons. Pertinent parts of that letter state:

> The idea you have about making Billy [Hank Williams' reputed widow] a legal wife isn't bad at all but I fear that once you accept her as one she will try every trick in the book. I keep thinking about the time when it will be necessary to renew copyrights on Hank's songs, as his legal wife she will be the one to do that unless of course that is one of the rights

she gives up. Somehow I just can't picture her giving anything up.

> \*　　\*　　\*　　\*　　\*　　\*

> Thanks for sending the royalties check. It sure came in handy.... I want to thank you again for looking out for me. You know if mother adopts that child there will be a new will. Tee [Smith's husband] says that if she adopts it and then can't take care of it, he is not going to let me take it. Keep this under your hat, mabey [sic] it will never be necessary for me to have the child at all. I feel that poor child would have a lot better chance in this life if it were adopted by someone that would never know of its origin at all.... Oh, well I guess I sound like I just don't want mother to change her will but really that isn't it at all....

Additional correspondence between attorney Stewart and legal counsel for Wesley Rose, one of the copyright assignees, reveals Stewart's early knowledge of plaintiff's claim to the copyright renewals. Relevant language in a letter from Rose's counsel to Stewart, dated February 28, 1962 stated:

> There is no way of evaluating now what a share of the renewal copyrights would be worth and no one could predict their valuation. We feel that a nominal payment might forever cut off the right of this child to the renewals....

Stewart's letter in response, dated July 5, 1962, noted:

> Since the statutory right of the child comes to it through its father, and since the federal courts have held this right belongs to an illegitimate, we may be faced with a difficult problem, and certainly one we would not want to litigate....

Stewart then listed several alternative ways that plaintiff's rights to the renewals might be cut off.

In 1967 Audrey Williams, Hank Williams' former wife (now deceased), petitioned for final settlement of the estate on behalf of her son Hank Williams, Jr. Attorney Stewart was called to testify by a guardian ad litem representing plaintiff. Although he

produced a child support and custody agreement executed by Williams—which provided that plaintiff would be cared for by Williams—he did not divulge to the court information he had respecting other matters relating to plaintiff's claim to an interest in her father's estate.

In 1967 and 1968 the Montgomery County Circuit Court accordingly ruled that plaintiff was not an heir to Williams' estate. Despite this ruling, when in 1969 Stewart became administrator of Williams' estate (succeeding defendant Smith), he began setting aside a share of the estate for plaintiff's benefit. At one time he wrote to Williams, Jr.'s attorney: "the last two distributions to Randall ... were actually an encroachment on the one-half of the Estate which could conceivably be claimed by the child." When Williams' estate was closed in August 1975, the portion set aside for plaintiff was distributed along with the other estate assets.

### B.

Based upon this evidence the Supreme Court of Alabama concluded there was sufficient evidence of fraud perpetrated against Cathy Stone to make disposition of her case by summary judgment on that issue inappropriate. The court also examined whether plaintiff's claim should be barred by laches, and ruled that plaintiff's delay was excusable. The Alabama Supreme Court reasoned that she was permanently removed at age three from the city of her birth to another city for the express purpose of making it highly unlikely that she would discover her father's identity; all public records that might have revealed her paternity were ordered sealed; plaintiff had no idea of her relationship to Williams until 1974, and even then when the matter was first presented to her it was presented as mere speculation; the findings of the Alabama trial court in 1967 and 1968 (declaring that plaintiff was not an heir) were tainted by intentional fraud on the part of the administratrix and attorney of Williams' estate; and finally, plaintiff made prompt demand for her share of her father's estate as soon as she received the

sealed records containing firm evidence of her paternity.

### II

Although not bound by the decision of the Alabama Supreme Court—its decision involved different parties and applicable law—we believe that its finding of fraud requires a reappraisal of our decision made before that court ruled. *Cf. Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed.Cir. 1986) (defendant's egregious conduct may defeat its laches defense); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 874 (E.D.N.Y.1978) ("one who seeks Equity's assistance must stand before the court with clean hands"). More particularly, the finding of fraud warrants a reassessment of the prejudice to defendants that may result should we permit plaintiff's claim to proceed on the merits. *See, e.g., Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 534, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir.1980). We recognize that the principal defendants in the action before us are Hank Williams, Jr. and Billie Jean Williams Berlin, Hank Williams, Sr.'s common-law wife, not the administratrix and attorney of Williams' estate, as in the Alabama action. However, recited evidence in the Alabama court makes clear that the present defendants were aware of plaintiff's rights to the copyright renewals long before plaintiff. Irene Smith, who was instrumental in concealing from plaintiff evidence of who her father was, acted as Hank Williams, Jr.'s guardian during the 1967–68 proceedings. Similarly, Smith, as administratrix, and Stewart, as attorney, of Hank Williams' estate, conspired to conceal from Cathy Stone her potential rights, and took pains to cut off those rights. These actions of his guardian benefited Hank Williams, Jr. Hank Williams, Jr.'s counsel was further advised by Stewart that a portion of the estate income was being withheld for appellant. Williams, Jr. never disavowed Stewart's actions, or mentioned any of these facts in prior court proceedings in Alabama in 1985 or in the district

court proceeding we earlier reviewed and to which he and plaintiff were parties.

The prejudice to defendants we identified in our prior opinion, 873 F.2d at 625, would not have existed but for the failure of the present defendants to reveal the facts of which they had knowledge. Defendants could have sought a court declaration of their rights vis-a-vis plaintiff. Instead they chose to remain silent. They should not now be allowed to claim that they are prejudiced by plaintiff's present assertion of her rights when they were aware of them all along.

Consequently, in reassessing the equitable circumstances peculiar to this case, the equities fall on plaintiff's side. The present litigation is a contest, after all, between Hank Williams' heirs over copyright renewal rights. To allow defendants to bar plaintiff from claiming her rights when the availability of the laches defense was obtained by them in such an unworthy manner would not only grant defendants a windfall in this suit to which they are not entitled, but would also encourage a party to deliberately mislead a court. Courts of equity exist to relieve a party from the defense of laches under such circumstances. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946).

Consequently, the evidence of fraud, which the Alabama Supreme Court found persuasive, makes summary judgment dismissing plaintiff's claim on the grounds of laches inappropriate. The figure representing justice is blindfolded so that the scales are held even, but justice is not blind to reality. Plaintiff therefore should have her day in court and an opportunity to have a jury determine the merits of her claim.

### III

Plaintiff also requests a rehearing *en banc*. She claims an *en banc* hearing is merited because the dismissal of her claim on the ground of laches contradicts copyright law established by the Supreme Court in *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960) and *Menendez v. Holt*, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888), and by us in *New Era Publications International v. Henry Holt & Co.*, 873 F.2d 576 (2d Cir.1989). Since the dismissal of the case on laches grounds which this panel originally affirmed is now reversed, we need not decide this question.

### IV

The petition for rehearing is granted. The previous opinion of this Court of April 21, 1989, *Stone v. Williams*, 873 F.2d 620 (2d Cir.1989), is vacated, and replaced by the present opinion which now reverses the dismissal of plaintiff's complaint by the district court on the ground of laches. The matter is remanded to the district court for further proceedings on the merits.