**LARRY SPIER, INC., Plaintiff,**

v.

**BOURNE CO., Defendant.**

**No. 90 Civ. 1065 (CSH).**

United States District Court, S.D. New York.

Nov. 8, 1990.

Feinman & Krasilovsky, New York City (Andrew J. Feinman, of counsel), for plaintiff.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Janet P. Kane, Theodore C. Max, of counsel), for defendant.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action under the Copyright Act between two music publishers, plaintiff seeks a declaration that defendant's rights in certain songs have been terminated and an accounting. Defendant moves under Rule 56, Fed.R.Civ.P., for summary judgment dismissing the complaint.

#### Background

Plaintiff Larry Spier, Inc. ("Spier") and defendant Bourne Co. ("Bourne") are music publishers.

The late Dave Dreyer was a composer of popular songs. During the period 1925 through 1931, Dreyer, in collaboration with such legendary figures as Al Jolson and Billy Rose, co-authored five songs: "Me and My Shadow", "Wabash Moon," "There's a Rainbow Round My Shoulder," "Back In Your Own Backyard," and "Cecilia." Shortly after their composition, Dreyer assigned his copyrights to the songs to Bourne's predecessor in interest, Irving Berlin, Inc. Those assignments were for

the initial term of the copyrights. In 1951 Dreyer assigned the renewal terms of the copyrights to Bourne.

On January 5, 1965 Dreyer executed his last will and testament, adding a first codicil on March 8, 1965. Dreyer died on March 2, 1967.

After making certain specific bequests, Dreyer's will provided as follows:

THIRD: I anticipate that among the assets of my estate will be copyrights, renewal copyrights and extensions thereof, and publishing contracts with respect to musical compositions written by me, and the rights deriving from my membership, as a writer, in the American Society of Authors, Composers and Publishers (ASCAP), in accordance with its rules. All of such property will hereinafter be referred to collectively, for convenience, as my "music assets".

The Fifth Article of Dreyer's will placed those "music assets" into a testamentary trust. The will provided:

FIFTH: All of my assets other than those which shall have been set apart as principal of Trust "A", and after ANNA's death those music assets which theretofore had constituted a part of Trust "A", I give and bequeath to my Trustee to hold, manage, invest and reinvest the same, and to collect the income therefrom, upon the following uses and purposes: ...

Dreyer was survived by his widow Anna Dreyer, his son Lewis Dreyer, and his daughter Marie Dreyer Rothblum. The will was probated, the trust came into being, and trustees were appointed. Under the will Anna Dreyer received a certain portion of the net income from copyright and renewal rights, with remaining income divided between Dreyer's son Lewis, his daughter Marie Dreyer Rothblum, and Mynna Granat, his mistress. Upon the death of Anna Dreyer, all the net income from copyright and renewal rights was to be distributed equally between Mynna Granat, Marie Dreyer Rothblum and Lewis Dreyer. The will provided that the trust would survive at least until the death of two of these named beneficiaries.

In 1972, prior to expiration of the initial and renewal terms of the copyrights to the songs in question, Lewis Dreyer died, leaving his wife Beth and two sons Steven D. Dreyer and Dean Dreyer. In 1984 Anna Dreyer died intestate. In 1989 Dean Dreyer died intestate.

In accordance with Dreyer's will, the American Society of Composers, Authors and Publishers ("ASCAP") and the Songwriters Guild are distributing royalties in respect of Dreyer's compositions. The present schedule of distribution is: one-third to Mynna Granat, one-third to Marie Dreyer Rothblum, one-sixth to Steven D. Dreyer and one-sixth for the benefit of Dean Dreyer's son.

In April 1981, Anna Dreyer, Marie Dreyer Rothblum, Steven D. Dreyer, and Dean Dreyer executed and mailed to Bourne notices of termination, purportedly pursuant to the Copyright Act, 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, seeking to terminate Bourne's rights to the songs in question. In 1988 Steven D. Dreyer and Dean Dreyer executed assignments of their rights to the songs to Spier. It appears from plaintiff's amended complaint that in May 1990, in apparent response to defendant's present motion, Marie Dreyer Rothblum assigned her rights in the songs to Spier. Mynna Granat has not joined in any assignment to Spier.

On these undisputed facts, Bourne moves for summary judgment dismissing the complaint on two grounds. First, it is said that Spier's assignors possessed no right of termination of copyright because Dave Dreyer, the author, had transferred all of his copyright interests by will. In the alternative, Bourne argues that assuming there was a right of termination, the purported assignments are invalid because not executed by the number and proportion of persons required by § 304(c)(6)(C).

*Discussion*

I.

Spier sues as assignee of copyright infringements in the Dreyer songs. Its suit alleges that Bourne's copyright inter-

ests in those songs were terminated by Dreyer's heirs, who thereafter assigned the interests to Spier. Bourne contends on this motion that the Dreyer heirs possessed no right of termination and that Bourne's rights in the copyrights were unaffected by the notices of termination. The case turns upon the proper construction of section 304(c) of the Copyright Act of 1976, 17 U.S.C. § 304(c).

Before turning to that section, it is appropriate to observe that the Copyright Act expressly provides that "[t]he ownership of a copyright ... may be bequeathed by will ..." 17 U.S.C. § 201(d)(1). Dave Dreyer acted pursuant to that statutory authority when he executed a will creating a testamentary trust of which his musical assets became the corpus. Those musical assets include, "copyrights, renewal copyrights and extensions thereof, and publishing contracts with respect to musical compositions written by me ..." The trust came into being upon Dreyer's death in 1967 and the admission of his will to probate.

Section 304 of the Copyright Act of 1976 deals with duration of copyright. § 304(a) provides:

> Any copyright, the first term of which is subsisting on January 1, 1978, shall endure for twenty-eight years from the date it was originally secured: ...

A second proviso to 17 U.S.C. § 304(a) provides that:

> the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his or her next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of forty-seven years ...

§ 304(c) begins with this language:

**Termination of Transfers and Licenses Covering Extended Renewal Term.**—In the case of any copyright subsisting in either its first or renewal term January 1, 1978, other than a copyright in a work made for hire, the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978, by any of the persons designated by the second proviso of subsection (a) of this section, otherwise than by will, is subject to termination under the following conditions: ...

There then follows elaborate statutory provisions with respect to who may effect a termination of the grant if the author is dead, and in what manner. I need not quote them. It is sufficient for present purposes to say that the statutory termination right devolves upon the author's widow or widower, children, and children of those children. Plaintiff's assignors purported to act under those provisions in terminating defendant's copyright interest in the Dreyer songs.

§ 304(c) covers "the exclusive or non-exclusive grant of a transfer or license of renewal copyright or any right under it, executed before January 1, 1978 ... *otherwise than by will* ..." (emphasis added).

Bourne argues that when § 201(d)(1)'s authorization of the bequeathing of the ownership of the copyright by will is read in conjunction with § 304(c)'s provisions for termination of transfers "otherwise than by will," the plain language of the statute exempts from § 304(c) termination those "copyrights, renewal copyrights and extensions thereof and publishing contracts" which form the corpus of Dave Dreyer's testamentary trust.

Spier argues that the "otherwise than by will" phrase in § 304(c) refers to only a grant of copyright renewals made by will. Since Dreyer assigned the renewal terms of the copyrights to Bourne by separate contract prior to his death, and not in his will, Spier argues that his heirs may invoke the termination procedures of § 304(c).

Both statutory constructions are arguable. Neither the Supreme Court nor the Second Circuit appear to have squarely addressed the issue.[1] I may therefore consid-

---

**1.** Spier cites *Stewart v. Abend,* —— U.S. ——, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), and *Miller*

*Music Corp. v. Charles N. Daniels, Inc.,* 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). The

er the legislative history. The House Report on the Copyright Act said of section 304(c):

> the right of termination would be confined to inter vivos transfers or licenses executed by the author, and would not apply to ... the author's own bequests. H.Rep. No. 94–1476 (94th Cong., 2d Sess. 125), U.S.Code Cong. & Admin.News 1976, p. 5740.

Thus Bourne's statutory construction appears more consistent with the congressional intent underlying the provision for termination. Surely, in the case at bar, Bourne's construction is more consistent with the intent of the late Dave Dreyer. The terminations attempted by Dreyer's natural heirs would, if effective, entirely cut off Mynna Granat, Dreyer's former mistress, as a beneficiary of the testamentary trust in respect of these five songs. Bourne argues that such a result would contravene § 304(c)(6)(D), which provides that the termination of a grant under § 304(c) "in no way affects rights arising under other Federal, State, or foreign laws"; Bourne makes reference to the New York Estates Powers and Trust Law, under which Dreyer's will and trust are administered. I think the argument stretches § 304(c)(6)(D) too far, and Bourne cites no cases in support of it. But I decline to adopt a construction of the Copyright Act which would thwart an author's intentions expressed in a will, particularly where Congress made plain its legislative intention to authorize the transfer of copyright interests by bequests in wills, and, in the particular context of termination, to protect the author's bequests.

I attach significance to the breadth of Dave Dreyer's testamentary trust. The "music assets" constituting the trust corpus consist not only of "copyrights" and "renewal copyrights," but "publishing contracts" as well. The renewal copyrights assigned by Dreyer to Bourne in 1951, which obligated Bourne to pay Dreyer royalties, constitute "publishing contracts" within the contemplation of the will and

trust. To avoid summary judgment, Spier must show that the proper construction of § 304(c) authorizes the destruction of contracts an author bequeathed into trust by his will, and the disenfranchising of a trust beneficiary (here Mynna Granat) for whom the author sought to make provisions.

I decline to place that construction upon the statute. Instead, I conclude that the provisions of Dave Dreyer's will operated to exempt the copyrights, renewal copyrights, and publishing contracts from the scope of § 304(c). It follows that Dreyer's natural heirs had no power to terminate the several copyrights of these songs, and their purported assignments to Spier are nullities. Bourne is entitled to summary judgment.

## II.

■ If I am wrong in that conclusion, Bourne's motion for summary judgment fails because there is no merit to its alternative basis.

When Bourne filed its motion, only Steven D. Dreyer and Dean Dreyer, sons of Lewis Dreyer and grandsons of Dave Dreyer, had signed an assignment to Spier. They signed that assignment in May 1988. It appears from the face of the document that Anna Dreyer, Marie Dreyer Rothblum, Steven D. Dreyer, and Dean Dreyer signed the notice of termination in April 1981.

Bourne argued in its original brief that an assignment executed only by Steven D. Dreyer and Dean Dreyer did not satisfy § 304(c). § 304(c)(6)(C) provides that an assignment by those holding termination rights "is valid only if [the assignment] is signed by the same number and proportion of the owners, in whom the right has vested under this clause, as are required to terminate the grant under clause (2) of this subsection." Bourne argued that the statute required "[e]xecution of the purported assignment by all" who signed the notice of termination. Main Brief at 8.

Anna Dreyer died intestate in 1984. Obviously she could not join in an assignment to Spier in 1988. But I do not think that

---

cases considered the rights of statutory successors and executors when an author dies before

the renewal period arrives. Neither case involved a bequest of copyright rights by will.

eliminates the power of the surviving heirs to make assignments, since § 304(c)(2)(A) provides that "the author's surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower ..." Here there is no longer a widow.

§ 304(c)(2)(C) provides:

the rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.

Bourne derives from that division a requirement of majority action which it also argued the assignment to Spier failed to satisfy, since Steven and Dean Dreyer each held at most a one-quarter interest in the copyrights, and: "Fifty percent is not a majority." Main Brief at 8. Accordingly, Bourne contended that the assignment executed only by Steven and Dean Dreyer was invalid.

Spier responded to that argument by obtaining an assignment from Marie Dreyer Rothblum, Dave Dreyer's daughter. That assignment is pleaded in an amended complaint dated May 23, 1990 which Spier filed and served as right. As the result of that assignment, all of Dave Dreyer's surviving heirs holding the statutory power of termination (if they hold such power at all, contrary to the Court's conclusion under Point I) have executed assignments to Spier.

The Marie Dreyer Rothblum assignment does not cure the defect, Bourne argues in its reply brief, because "[e]ach assignment is a separate legal document conferring the rights of a distinct party ... and neither incorporates or references the other assignment." Consequently, Bourne says, neither assignment has been executed by the requisite statutory majority. I reject this argument as exalting form over substance. Spier can now point to one hundred percent participation in assignments to it by those individuals who I assume for the purpose of the present discussion own termination rights. A sensible reading of the statute should require no more.

### Conclusion

For the reasons stated herein, the Clerk of the Court is directed to enter summary judgment in favor of defendant and against plaintiff, dismissing the complaint with prejudice.

It is SO ORDERED.