## SELWYN & CO., Inc., v. VEILLER.

District Court, S. D. New York.
March 2, 1942.

Phillips & Nizer, of New York City (Louis Nizer and Sidney Freidberg, both of New York City, of counsel), for plaintiff.

Sidney R. Fleisher, of New York City (Edward E. Cohen, of New York City, of counsel), for defendant.

RIFKIND, District Judge.

In 1914 defendant executed in favor of plaintiff an "assignment of copyright" which was shortly thereafter duly recorded in the copyright office. The subject matter of the assignment was "the certain copyrights heretofore taken out by me, the undersigned, and now being in my name, as the copyright proprietor for and covering the play or dramatic composition entitled 'The Miracle' or 'Within the Law' and all my right, title or interest, of whatsoever sort, kind, name, nature or description in and to the said copyright and the proprietorship thereof, * * * together with all my literary property, right, title and interest in and to the said play or dramatic composition and in or to the copyright thereof, and all the benefit, profit and advantage that shall or may arise from printing, publishing, vending, performing, producing, exhibiting, adapting, selling, leasing or otherwise in any way dealing with

492

the said play or dramatic composition and the said copyrights thereof, to have and to enjoy the same during the full term for which said copyrights have been issued or granted and during any renewals or extensions thereof, and I hereby authorize the said Selwynn and Company, play brokers, its successors and assigns, to apply for and receive renewals and extensions of the said copyrights at any time as it desires so to do, and I hereby further constitute and appoint the Selwynn and Company, play brokers, my attorney irrevocable, and in my name or otherwise, to take all proper and legal measures for the protection and enforcement of the said copyrights and of all rights in and to the said play or dramatic composition arising thereunder and for the collection of any and all sums of money which may now be due or which may become due by reason of or arising out of the said copyrights or either of them for any use or production of the said play".

In 1917 plaintiff assigned its motion picture rights in the foregoing play to Vitagraph Pictures, Inc., from whom Loew's, Inc., subsequently obtained these rights by mesne conveyances prior to the commencement of the present action. Prior to Loew's acquisition of the motion picture rights an agreement was executed, sometime in 1922, to which plaintiff, Vitagraph Pictures, Inc., and one Joseph M. Schenck were parties whereby, inter alia, plaintiff agreed as follows: "The party of the second part [the plaintiff herein] further agrees that this agreement shall cover any and all renewal periods of the copyright of said dramatic composition and agrees within the time prescribed by statute to apply for and secure a renewal of the copyright of said dramatic composition and thereupon to assign to the party of the third part [Joseph M. Schenck] the motion picture rights therein and thereto * * *".

On January 25, 1939, defendant executed an agreement with Loew's, Inc., whereby he granted to the latter certain motion picture rights in the aforementioned play. In the agreement it was expressly provided "that all the representations, warranties and covenants herein made by owner are subject to said assignment" of 1914 to Selwynn & Company. This agreement was accompanied by an instrument signed by defendant, his wife and son, which in part provided: "(2) The undersigned, Margurite Veiller, wife of Bayard Veiller, and the undersigned, Anthony Veiller, the only child of Bayard Veiller, each confirm and

agree to all the foregoing so far as they now or later may have interest therein, and each agree that in the event of the death of the said Bayard Veiller before the expiration of the original term of said copyright of February 8, 1913, they (or either of them then so entitled to apply) will apply for the renewal thereof, and as widow or as surviving child as the case may be, and will then convey in writing unto Loew's and without further consideration, the same and equal rights and privileges under said renewal of copyright of February 8, 1913, and for the full term thereof, as are now described or conveyed by said Bayard Veiller to Loew's under the agreement annexed, * * *".

The renewal of the copyright was effected by defendant on January 27, 1939, within the time permitted by law.

By the instant action plaintiff seeks to recover from the defendant the consideration received by the latter from Loew's, Inc., for the agreement of January 25, 1939. The complaint further seeks a direction to the defendant to execute to plaintiff an assignment of his right, title and interest in the renewal copyright.

The complaint is framed on several theories: Money had and received, conversion, breach of contract, and breach of trust. Regardless of theory, however, the complaint raises the basic issue whether plaintiff is entitled legally or equitably to the consideration received by the defendant from Loew's, Inc.

■ Plaintiff insists that by the assignment of 1914 it obtained from defendant the totality of rights pertaining to the play. I shall, at this point, assume the validity of the contention. It follows as a necessary consequence that the mere making of the agreement of January 25, 1939, expressly subjected to the 1914 assignment, in no way injured the plaintiff since Loew's, Inc., took nothing by the agreement. Should Loew's, Inc., wrongfully attempt to exercise any rights which belong to plaintiff it would, of course, have to respond to plaintiff. Indeed, plaintiff does not complain of the making of the agreement. It does not suggest that defendant converted plaintiff's play to his own use. It seeks only to recover the consideration which the defendant received.

To sustain such a claim we must find a basis for it in the agreement of the parties. Unless it is in the agreement there is no other legal foundation therefor. Plaintiff

points to the language in the 1914 agreement which provides for the sale to plaintiff of the copyright, the literary property, and "all the benefit, profit and advantage that shall or may arise from printing", etc. The crux of the case is in the meaning of these words. Do they impose upon the defendant the duty to account in the future for all benefits or profits which may arise from dealing with the play and, if so, is the benefit which the defendant has received included within the scope of the obligation? These questions must be answered in the negative. The entire agreement, both in form and content, is instinct with the intention to make a present conveyance without the assumption of future obligations except those, perhaps, which are implied in law.

■ The instrument is called an assignment of copyright. It is signed only by the assignor. There is not in its text a single verb of which the defendant is the subject which is in the future tense. Even as to the renewal of the copyright the defendant does not undertake to do anything. He authorizes the plaintiff to take all the necessary steps. It is manifest that when the 1914 instrument was taken plaintiff had no intention of relying upon any future conduct of defendant but took unto itself all the rights and powers which in its judgment were adequate to endow it with all "the benefit, profit and advantage" that might arise from the play. It is to be observed that, whereas defendant appoints plaintiff as his attorney for two specified purposes, nowhere is defendant designated as plaintiff's attorney for any purpose. This analysis compels the conclusion that defendant did not undertake to account to plaintiff for such profit or benefit as is herein under consideration.

■ From the foregoing we must necessarily infer that the consideration received by defendant from Loew's was not within the contemplation of the parties as one of the objects of the 1914 assignment. Although I have accepted plaintiff's contention that by that instrument it acquired the totality of rights and benefits which the defendant was able to convey with respect to his play, nevertheless even this broad concept has its necessary boundaries. Thus, clearly, the possible enhancement of defendant's reputation as a playwright as a result of the dramatization of the play, we must assume, was not within the contemplation of the parties. A literary or dramatic award by the Pulitzer Prize Committee would similarly, presumably, be excluded. The benefits defendant might obtain from employment by a motion picture company as scenario writer even upon this very play or as one of the actors would not be included within the terms of the grant. The test is the intention of the parties as gleaned from the writing. It would seem to me that the illustrations I have mentioned would be excluded from the terms of the 1914 assignment even if that instrument contained an express covenant to account for future benefits.

Even if such a covenant were included in the assignment, could we say that the consideration received by the author from the present owner of the motion picture rights for an assignment of whatever rights the author might have in order to give such owner a sense of security against possible defect of title, is a benefit for which the defendant must account? I think not. This negative conclusion appeals to commonsense.

Since, as plaintiff contends, defendant transferred to Loew's no rights (as he had nothing to give), it may be said that in fact there was no "dealing" with the play and the profit, therefore, did not arise out of such dealing. If plaintiff's own contention is rejected and we assume that defendant did have some rights to deal with and that by the 1939 agreement defendant sold these rights to Loew's, then by hypothesis such rights were not included within the benefits sold to plaintiff in 1914 and, therefore, no accounting for the proceeds need be made to plaintiff.

The practical considerations sustain this view. The Witmark case, M. Witmark & Sons v. Fred Fisher Music Co., D.C. S.D.N.Y., March 24, 1941, 38 F.Supp. 72, Conger, J., affirmed 2 Cir., Feb. 11, 1942, 125 F.2d 949, and the very case at bar indicate that there is controversy as to who is the true owner of the renewal copyright regardless of the breadth of language used in the original assignment. Loew's had already acquired indirectly from plaintiff all the motion picture rights which the latter had in the play. It is fair inference that it did not care to risk the large expenditure involved in a modern motion picture production in reliance upon the rights it had thus acquired unless it could insure itself against the contingency that the courts might hold the author, and not his assignee, the true owner of the renewal copyright.

494

It purchased that insurance by paying the author a consideration for the 1939 agreement. It also purchased the wife's and son's assurances against the contingency of the author's death before renewal was effected.

Loew's apprehension is all the more understandable since the period within which the copyright could be renewed was rapidly running its course. The plaintiff corporation which had agreed, by the 1922 contract with Loew's predecessor, to procure the renewal had in 1936 been dissolved by the State of its incorporation. New York Tax Law § 203-a; 59 McKinney's Consolidated Laws of N.Y. C. 60, § 203-a. True enough the corporation was revived on December 8, 1939, after the commencement of the action, by the annulment of its dissolution, N.Y. Tax Law, § 203-a, subd. 7; and the language of the statute appears to endow such a dissolved corporation with retrospective existence to the date of dissolution. This may conveniently dispose of the metaphysical difficulty of dealing with interrupted existence. It does not change the undeniable fact that when the agreement of 1939 was made Loew could not deal with plaintiff because plaintiff was then legally nonexistent.

Nor could Loew have obtained from plaintiff the agreement of defendant's wife and son—an important consideration in view of defendant's advanced age—because plaintiff itself had no legal claim upon them.

The closest analogy to the facts of the case is the elimination of vague and remote doubts from the title of valuable real estate by the purchase of quitclaim deeds from possible claimants. That is a common occurrence. It has never been suggested that the successors in interest to such claimants acquire a right to the consideration paid for the quitclaim deeds.

The second prayer of the complaint is for a direction that defendant assign the renewal copyright to plaintiff. It raises the same issue as the Witmark case and has been settled for this Court by the Circuit Court of Appeals. M. Witmark & Sons v. Fred Fisher Music Co., Inc., 2 Cir., 125 F.2d 949, decided February 11, 1942. I am constrained, by the authority of that decision, to hold that plaintiff is entitled to a decree adjudicating that as against the defendant it is the owner of the renewal copyright.