**Yvonne Dixon CRESCI and Estelle Dixon Jaffe, Plaintiffs,**

v.

**MUSIC PUBLISHERS HOLDING CORPORATION, Harms, Inc., M. Witmark & Sons, Remick Music Corporation and Advanced Music Corporation, Defendants.**

United States District Court
S. D. New York.

Oct. 19, 1962.

Gustave B. Garfield, New York City, for plaintiffs.

Joseph D. Karp, New York City, for defendants; Paul A. Baumgarten, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Defendants move pursuant to Rule 12 (h), F.R.Civ.P., to dismiss the amended complaint for lack of jurisdiction of the subject matter. Plaintiffs have cross-moved for leave to serve a further amended complaint under Rule 15(a), F.R.C.P.

In order to dispose finally of the question of subject matter jurisdiction raised by defendants' motion to dismiss, plaintiffs' cross-motion to amend further will be granted and the defendants' motion will be deemed addressed to the complaint as so further amended.

Plaintiffs are the surviving daughters of Mort Dixon, a composer and lyric writer who died on March 23, 1956. In addition to his two daughters Dixon left a widow who is their stepmother and is not a party to this action.

Dixon was a prolific writer of popular songs which were copyrighted by various music publishers. This action concerns some 65 of such songs copyrighted in the years from 1928 to 1939.

According to the amended complaint, on November 10, 1948 Dixon entered into an agreement with defendant Music Publishers Holding Corporation (Music) by the terms of which he assigned to Music all of his right, title and interest, vested and contingent, to the renewal copyrights of a large number of the copyrighted songs which he had written. The copyrights had been obtained by the other defendant publishers which are subsidiaries of Music as respectively

listed in a schedule annexed to the agreement. They included the 65 compositions involved in this action.

Music agreed to pay royalties upon the compositions according to a schedule set forth in the agreement "continuing during the original and renewal periods of the copyrights," and to cancel a debit balance against advance royalties owed to it by Dixon, said to be some $25,000. Dixon also agreed to cause his wife and adult daughter to execute instruments agreeing to be bound by the agreement and assigning any right, title and interest which they might have in the renewal copyrights to Music. He also agreed to cause his minor daughter, who was then 18 or 19, to execute a similar instrument when she reached the age of 21. The agreement was binding upon and inured to the benefit of Dixon and "his heirs, executors, administrators and assigns."

On the day the agreement was executed Dixon's adult daughter (now plaintiff Estelle Jaffe) executed assignments of her renewal rights as called for by the agreement to Music and to the other defendants. On August 6, 1950 his other daughter (now plaintiff Yvonne Cresci), who had by then become of age, executed a similar document. Shortly after Dixon's death his widow also executed the assignments called for by the agreement.

These assignments were duly recorded in the copyright office and from time to time as the renewal periods of the various copyrights accrued, they were renewed by the assignees under the assignment of Dixon's renewal rights prior to his death, and thereafter under the assignment of the renewal rights by his wife and two daughters.

In substance the complaint charges that plaintiffs' father, the composer Dixon, entered into a conspiracy with the defendants to obtain from plaintiffs the assignment of their expectant renewal rights in the songs without any consideration and that in pursuance of the conspiracy Dixon took advantage of his relationship of trust and confidence with his daughters and persuaded them to execute the assignments of their renewal rights without knowing what they were doing, and by false and fraudulent misrepresentations. The claim is made that the assignments are void and of no effect because of the fraud and overreaching practiced upon the plaintiffs by their father with the connivance and participation of defendants.

Woven through the complaint are allegations to the effect that Dixon's agreement with Music as it affects plaintiffs and the assignments by plaintiffs are in violation of "the public policy of the United States as expressed in §§ 24 and 28 of the Copyright Law." Such violations of public policy are claimed to include lack of or inadequate consideration for the assignments, and coercion and fraud in inducing their execution, as well as assignment of contingent expectancies in renewal rights prior to the composer's death and before they became vested.

Additional allegations charge that defendants are "unfairly competing" with plaintiffs by exercising alleged rights to the compositions under the assignments. It is also alleged that there is an actual controversy between the parties within the purview of the federal declaratory judgment statute.

The amended complaint predicates subject matter jurisdiction on 28 U.S.C. §§ 1338(a) and (b), asserting that this is a civil action arising under the Act of Congress relating to copyrights joined with a substantial and related claim for unfair competition.

Judgment is sought declaring that the agreement between Dixon and Music and the assignment of plaintiffs' renewal rights to Music and the other defendants are void and of no effect; that defendants have acquired no rights in the renewal copyrights and that plaintiffs are the owners of an undivided interest in them. Plaintiffs ask that defendants be directed to execute such documents as may be necessary to vest them with title to the copyrights which have been renewed and to the renewal rights in the copyrights not yet renewed; that defendants be enjoined from renewing any copyrights

in the future as plaintiffs' agents and that they be required to account for any benefits received under the renewed copyrights.

■ A plaintiff invoking the jurisdiction of the federal courts is required to allege affirmatively in his complaint facts showing that such jurisdiction exists. Gully v. First National Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

In the case at bar there is concededly no diversity jurisdiction under 28 U.S.C. § 1332. Federal jurisdiction here is predicated on 28 U.S.C. § 1338(a) and (b). Under these sections the district courts are given original jurisdiction of civil actions arising under any Act of Congress relating to copyrights and over civil actions asserting claims of unfair competition when joined with a substantial and related claim under the copyright laws.

The allegation that the suit is laid under the federal declaratory judgment statute, 28 U.S.C. §§ 2201 and 2202, in no way enlarges the scope of the court's jurisdiction. That statute by its terms covers only cases in which jurisdiction has otherwise been conferred on the court.

The sole question before me is whether, under the complaint as now amended, this suit is one arising under the copyright laws, jurisdiction over which has been conferred on this court by 28 U.S.C. § 1338(a). If it is not this court has no jurisdiction over the subject matter of the action and defendant is entitled to a dismissal.[1]

■ No claim is made in the amended complaint that the copyrights involved,

original or renewed, are invalid or that they have been infringed. The basic claim is that the assignments by plaintiffs of their renewal rights in the copyrights of their father's compositions were procured by the fraud of their father and through his breach of a confidential relationship with them and that the defendants participated in these acts. The question posed therefore is simply whether plaintiffs are equitably entitled to a restoration of the renewal rights so assigned and to the renewal copyrights obtained through such assignments.

■ The resolution of such questions depends on principles of common law and equity governing fraud and overreaching and plaintiffs' rights are dependent upon such principles. The fact that fraud has been committed with respect to a patent or a copyright does not confer federal jurisdiction. Wells v. Universal Pictures Co., 166 F.2d 690 (2 Cir., 1948); Eckert v. Braun, 155 F.2d 517 (7 Cir., 1946); Hoyt v. Bates, 81 F. 641 (C.C.D.Mass., 1897); Sachs v. Cluett, Peabody & Co., 91 F.Supp. 37 (S.D.N.Y. 1950); Walters v. Shari Music Publishing Corp., 193 F.Supp. 307 (S.D.N.Y. 1961). See also Harrington v. Mure, 186 F.Supp. 655, 657 (S.D.N.Y.1960) and Gorham v. Edwards, 164 F.Supp. 781, 783–784 (S.D.N.Y.1958).

Here the copyrights and the renewals in them are only incidentally involved in the claim of fraud and the plaintiffs' rights are not dependent in any way upon the federal statute. Plainly such a claim standing alone does not present a case arising under the copyright laws within the purview of § 1338(a) over which this court has jurisdiction. See Danks v. Gordon, 272 F. 821 (2 Cir., 1921) and cases above cited.

---

[1]. It may be noted that there are occasions when it is difficult to ascertain whether a complaint should be dismissed on the ground of lack of jurisdiction of the subject matter, or on the ground that plaintiff has failed to make out a claim upon which relief can be granted, i. e., to make out a case in which a federal court can grant relief. Cf. Ackert

v. Ausman, 198 F.Supp. 538, 544–545 (S.D.N.Y.1961); Ackert v. Bryan, 299 F.2d 65 (2 Cir., 1962). See also Note: The Evolution and Scope of The Doctrine of Pendente Jurisdiction in the Federal Courts, 62 Col.L.R. 1026, fn. 41 (1962) and authorities there cited. That problem does not affect the result here.

■■ Jurisdiction is not conferred on this court merely because ownership of the renewed copyrights or of the renewal rights assigned is in issue. There are cases which recognize the standing of an equitable owner of a copyright to sue for *infringement*. See Harrington v. Mure, supra, and cases cited at 186 F. Supp. 656. But as Judge Palmieri pointed out there, a federal court has no original jurisdiction to hear and decide a claim of title to a copyright. Such incidental power as it has to do so must depend upon its power to adjudicate an infringement claim where, in a case of that nature, as a preliminary matter, the federal court may permit the plaintiff to establish the facts as to his ownership interest on which his right to sue for infringement depends.

■ Where, as here, however, a claim of infringement is absent, the federal courts are without jurisdiction to determine questions of title dependent on general common law or equitable principles, and plaintiffs, in the absence of diversity, must look to the appropriate state courts to decide such issues. Harrington v Mure, supra; Gorham v. Edwards, supra

Plaintiffs, apparently recognizing these obstacles to federal jurisdiction over the basic claims which they assert in this action, have interlarded their amended complaint with allegations to the effect that the assignments which they executed and the contract between Dixon and Music in so far as it affects their rights are in violation of the public policy of the United States as expressed in §§ 24 and 28 of the Copyright Law, 17 U.S.C. §§ 24 and 28, and are therefore null and void. They contend that this court has subject matter jurisdiction here because questions of federal public policy under the copyright statutes are necessarily involved.

The difficulty with plaintiffs' position is that the claims which they allege do not involve any questions of public policy arising under §§ 24 and 28 or any other provisions of the copyright law, or, indeed, of any federal law.

Section 24 relating to the exercise of renewal rights, provides in pertinent part:

" * * * That in the case of any other copyrighted work * * *, the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the coyright office and duly registered therein within one year prior to the expiration of the original term of copyright: And provided further, That in default of the registration of such application for renewal and extension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication."

Section 28 merely provides:

"Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will."

I do not find in either of these sections any expression of federal public policy governing the subject matter of this action or applicable to the operative facts alleged in the amended complaint. Section 24 merely provides the circumstances under which the renewal rights to an original copyright may be exercised and the persons who are entitled to exercise them.

Under the scheme prescribed by Congress in § 24, the renewal right is severed from the right to the original copyright. The renewal right does not accrue until the filing of an application in the twenty-eighth year of the original term. Such an application may be filed by the person

or persons designated by the statute only if the appropriate circumstances provided by the statute then prevail. Until then the rights of the author, the widow, widower, or children of the author, or his next of kin, remain merely expectancies. See Miller Music Corp. v. Charles H. Daniels, Inc., 158 F.Supp. 188 (S.D. N.Y.1957), 265 F.2d 925 (2 Cir., 1958), 362 U.S. 373, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960); Fred Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055 (1943).

It is plain that it was the intention of Congress in enacting the section to provide that the renewal rights of a copyrighted work would inure to the benefit of the author if living at the time when application for renewal could be made, and, if not, to his widow or children or the other persons designated in the statute in the appropriate order of succession. Miller Music Corp. v. Charles H. Daniels, Inc., 362 U.S. at 376, 80 S.Ct. 792. But this is not to say that Congress laid down or attempted to lay down any policies governing the circumstances under which the expectancies of any of those who might be entitled to renewal rights should be assigned or under which the assignment of such rights could be obtained. These are matters quite beyond the scope of the statute.

■ It is settled that the author may assign his expectant interest in renewal rights. Fred Fisher & Co. v. M. Witmark & Sons, supra. The widow has a like capacity to assign her expectancy. See Miller Music Corp. v. Charles H. Daniels, Inc., supra, at p. 378, 80 S.Ct. 792; M. Witmark & Sons v. Fred Fisher Music Co., 125 F.2d 949, 953 (2 Cir., 1942), aff'd sub nom. Fred Fisher Music Co. v. M. Witmark & Sons, supra; Selwyn & Co. v. Veiller, 43 F.Supp. 491, 494 (S.D.N.Y.1942). The rights of adult children of an author to assign their renewal expectancies do not differ from those of the author himself or of his widow who succeeds to the right of renewal only as a member of a class which includes the children. Cf. De Sylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct.

974, 100 L.Ed. 1415 (1956). There is no basis for plaintiffs' contention here that there are restrictions upon a child's capacity to assign her expectant interest in the original copyrights of her father, be she so minded, or that she is not a proprietor entitled to assign under § 28. The statute does not so provide nor does it express any policy imposing such restrictions.

Plaintiffs also seek to invoke jurisdiction under § 1338(a) on a variety of other grounds, none of which has merit.

They contend that this is an action arising out of the copyright laws because there is an issue as to whether the assignments of renewal rights executed by them were without consideration or for an inadequate consideration. In support of this contention they rely on such cases as Rossiter v. Vogel, 134 F.2d 908 (2 Cir., 1943), 148 F.2d 292 (1945).

The Rossiter case is quite distinguishable from the case at bar. There suit was brought by an assignee of the author's renewal rights in a copyright against another assignee of the renewal rights. There were thus "two competing assignments of an expectancy, one some eleven years prior in time to the other." (134 F.2d 911.) Both had been recorded under §§ 30 and 31 of the Copyright Act (then §§ 44 and 45). The basic question presented involved a construction of these recording sections of the Act which controlled the respective rights of the competing assignees.

Once that question had been decided in plaintiff's favor the court went on to consider whether defendant had established defenses of lack of equity which would justify a court of equity in refusing to enforce plaintiff's assignment or to grant the aid necessary to make his assignment ultimately effective. (148 F. 2d 293.) Thus the court's power to determine whether there was "such coercion of circumstances that enforcement [of plaintiff's assignment] would be unconscionable" (Fred Fisher Music Co. v. M. Witmark & Sons, supra, 318 U.S. at p. 657, 63 S.Ct. at p. 779) was incidental to its power to adjudicate a case which

plainly arose under the copyright laws of the United States and that issue could be determined by the federal court in order to ascertain whether in fact the plaintiff was entitled to recover on his basic claim.

Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923) on which plaintiffs also rely does not aid them either. There the suit was based on the assignment of rights in a patent claimed to be valid under the patent laws of the United States. If the assignment were valid as claimed the suit was merely an ordinary action for an injunction and profits dependent on the validity of the patent and its infringement. An initial issue was raised as to whether the plaintiff's assignment was valid. The resolution of that issue required an interpretation of the patent laws of the United States. The assignment was found to be invalid on its face and therefore it was held that plaintiff could not sustain its action. The action was plainly one arising under the patent laws of the United States over which the federal courts had been expressly granted jurisdiction.

In the case at bar, however, in contrast to the Rossiter and Crown Die cases, plaintiffs, having assigned their rights by instruments of assignment which they concededly executed, are seeking to set aside such assignments on the ground of fraud and overreaching upon general principles of common law and equity. Their rights are in no way dependent on a construction or interpretation of the copyright laws and their action does not arise thereunder. The issue as to whether their assignments are valid or not is in no way a necessary incident to the determination of a suit arising under the copyright laws but stands on its own bottom.

Nor can federal jurisdiction be predicated on a necessity to decide questions as to the respective rights of co-owners in the renewal term which were left open in De Sylva v. Ballentine, 351 U.S. 570, at 582, 76 S.Ct. 974, 100 L.Ed. 1415, as plaintiffs contend. Plaintiffs have no dispute with these defendants as to the percentage of their ownership interest in the renewed copyrights, nor as to the division of royalties from the renewed copyrights, even assuming the assignments are null and void. In any event, no questions as to percentage of ownership could arise unless plaintiffs succeeded in setting aside the assignments which they executed on the common law or equitable grounds which are the actual subject matter of their action.

Finally, plaintiffs seek to invoke jurisdiction under § 1338(a) because it appears from the answer to the amended complaint (though not from the amended complaint itself) that, as to 11 of the more than 60 compositions involved here, Dixon had died during the 28th year of the original term, after the application for renewal had been filed but before the commencement of the renewal term itself on the first day of the 29th year. This, say the plaintiffs, raises the question of whether under the copyright laws, a composer's assignee loses its right to the renewed copyright if the composer dies after an application for renewal under the assignment from the composer is filed during the twenty-eighth year but before the renewal term actually commences.

Plaintiffs claim that this question has never been decided and was left open both by Miller Music Corp. v. Charles N. Daniels, Inc., supra, where the author died before the commencement of the twenty-eighth or renewal year, and by Fred Fisher Music Co. v. M. Witmark & Sons, supra, where the author was alive at the commencement of the twenty-ninth year when the renewal term commenced.

The point is of very doubtful merit in the light of the language of § 28. (See also Rose v. Bourne, Inc., 176 F.Supp. 605, 610 (S.D.N.Y.1959), aff'd 279 F.2d 79, 80 (2 Cir., 1960).) But apart from this there is no such issue presently in this action and there cannot be unless and until plaintiffs succeed in setting aside the assignments on general common law or equitable grounds. Plaintiffs' contention that these grounds which are the whole basis of their action should

be held to be pendent to a remote claim which might eventually arise under the copyright laws if plaintiffs were successful in their suit would result in the tail wagging the dog. Cf. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

The gravamen of this action is to set aside the assignments for fraud and overreaching. Any questions which might conceivably arise under the copyright laws are not only remote but quite incidental to that issue. Moreover, they could only affect a relatively minor proportion of the compositions involved. Should any such questions ever arise plaintiffs will have appropriate remedies available to them.

Whether an action is one over which jurisdiction has been conferred on the federal courts by Congress must be determined from its nature and foundation and does not depend on the remote possibility that during its future course some question under the copyright laws may incidentally arise. Congress did not confer upon the federal courts jurisdiction to determine all questions of copyright title. The jurisdiction conferred is only over cases in which federal legislation defines "the substance of the claim and the relief to be secured. Congress left a considerable residue of power in the state courts to pass on 'copyright questions'—among them, questions arising in contract and title disputes." Harrington v. Mure, supra, 186 F.Supp. at p. 658, and cases there cited.

The appropriate state courts are quite competent and have the power to pass on any questions that may arise in the course of this litigation. There is no basis for federal jurisdiction.

As to the alleged claim of "unfair competition" under § 1338(b), it may be noted that quite apart from whether any such claim is in fact alleged other than by mere characterization, jurisdiction can only be sustained if it "is joined with a substantial and related claim" under the copyright laws. Since, as I have held, there is no such substantial or related claim here this court has no jurisdiction under 1338(b).

The defendants' motion to dismiss the further amended complaint for want of jurisdiction of the subject matter is granted without prejudice to plaintiffs' right to maintain such other action as they may be advised in the appropriate forum.

Settle order on notice.