**HILL & RANGE SONGS, INC., Plaintiff,**

v.

**FRED ROSE MUSIC, INC. and Broadcast Music, Inc., Defendants.**

**No. 72 Civ. 363.**

United States District Court,
S. D. New York.

Nov. 2, 1972.

Abeles & Clark, New York City, for plaintiff; John S. Clark, New York City, Edward Holtzman, of counsel.

Orenstein, Arrow, Silverman & Parcher, New York City, for defendants; L. Peter Parcher, Martin L. Wilk, Eugene A. Wolkoff, Richard Frank, Jr., New York City, of counsel.

## OPINION

COOPER, District Judge.

This is an action for declaratory judgment brought by plaintiff to determine the ownership of renewal copyrights in musical compositions of Hiram Williams, deceased. Both sides claim ownership of the renewal copyrights by virtue of respective assignments thereof by the son and alleged widow of the composer.

Petitioner moves for dismissal of the complaint on the following grounds:

(a) lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1);

(b) lack of personal jurisdiction over defendant, Fred Rose Music, Inc. ("Fred Rose"), Fed.R.Civ.P. 12(b)(2);

(c) defective service of process upon Fred Rose, Fed.R.Civ.P. 12(b)(4);

(d) failure to join as parties to the action the Estate of Hiram Williams, Randall Hank Williams, and Billy Jean Williams, Fed.R.Civ.P. 12(b)(7);

(e) improper venue with respect to Fred Rose, Fed.R.Civ.P. 12(b)(3).

Petitioner moves in the alternative for a change of venue from this district to the Middle District of Tennessee. 28 U.S.C.A. § 1404(a).

The motion to dismiss is denied in all respects. The motion for a change of venue is granted. The Middle District of Tennessee is an appropriate and more convenient forum for maintenance of the action. 28 U.S.C.A. § 1404(a).

## I

▮ Petitioner contends that the instant controversy is not one "arising under any Act of Congress relating to . . . copyrights." 28 U.S.C.A. § 1338(a). We do not agree. The underlying issues of this action are whether Billy Jean Williams is the widow of Hiram Williams so as to be entitled to renewal rights granted by the Copyright Act, 17 U.S.C.A. § 24, and if so, whether she relinquished those rights through an alleged agreement with the Estate of Hiram Williams (see copy thereof appended to Stewart affidavit).

▮ While the interpretation of the contract itself might not be an adequate basis to sustain federal jurisdiction, the fact that it is contingent upon a determination of whether Billy Jean Williams is a "widow" within the meaning of the Copyright Act is sufficient to sustain federal jurisdiction. 17 U.S.C.A. § 24. The primary issue calls for interpretation of a federal statute and inquiry into the scope of its intended protection. The scope of a federal right is a federal question, even where its content may be determined by state as opposed to federal law. De Sylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). The right to obtain a renewal copyright and the renewal copyright itself exist by reason of the Act and are derived solely and directly from it. Miller Music Corp. v. Daniels, Inc., 362 U.S. 373, 375, 80 S.Ct. 792, 4 L.Ed.2d 804 (1959).

Federal jurisdiction has been recognized where the rights between two competing copyright assignees turned on a construction of the recording provisions of the Copyright Act. Marks Music Corp. v. Harris Music Pub. Co., 255 F.2d 518 (2d Cir. 1958); Sweet Music, Inc. v. Melrose Music Corp., 189 F.Supp. 655 (S.D.Calif.1960); Cresci v. Music Pub. Holding Corp., 210 F.Supp. 253 (S.D. N.Y.1962); Rossiter v. Vogel, 134 F.2d 908 (2d Cir. 1943), 148 F.2d 292 (2d Cir. 1945). See also Nimmer on Copyright, §§ 123–132. The federal interest in this matter is strong, and jurisdiction must therefore be maintained.

Cases cited by petitioner are distinguishable. In T. B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), the issue was whether an assignment was executed. No aspect of the suit required interpretation of the Copyright Act. In Cresci v. Music Pub. Holding Corp., 210 F.Supp. 253, 259 (S.D.N.Y.1962) and Muse v. Mellin, 212 F.Supp. 315 (S.D. N.Y.1962), the issue before the Court was exclusively one of contract interpretation. Unlike the instant controversy, those cases did not involve simultaneously, let alone primarily, a claim requiring construction of the Copyright Act.

## II

▮ Fred Rose has sufficient business contacts with New York to come within the personal jurisdiction of its courts. When a corporation solicits business in a state through a local office or through the efforts of locally based agents, it has been held to be doing business in that state for purposes of jurisdiction. Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir. 1960); Carter-Wallace, Inc. v. Ever-Dry Corp., 290 F.Supp. 735 (S.D.N.Y. 1968). We find that the business contacts of Fred Rose with New York, carried on locally through the offices of the Harry Fox Agency ("Fox"), Broadcast Music, Inc. ("BMI"), and Chappell & Co. are in total sufficient to sustain in personam jurisdiction.

Fred Rose carries on extensive business operations in New York and nationwide through the local offices of Fox, BMI and Chappell & Co. (See Affidavit in Opposition, pp. 4–7.) Movant does not deny this. Fred Rose music is sold regularly in New York stores; the musical publications are printed and warehoused in New York rather than shipped on demand from Tennessee; and all agreements respecting licensing of recording rights are negotiated and pre-

pared in New York by Fox, executed in New York by Fox as agent of Fred Rose, and administered from New York. (See Affidavit in Opposition, ¶ 6(a).) Similarly, public performance rights are licensed by Fred Rose through the local offices of BMI in New York which has the exclusive right to license performance rights for Fred Rose and collect all royalties and fees becoming payable therefore.

Movant contends that these so-called agents are in fact nothing more than administrative clearing houses, acting on a nationwide basis in behalf of the majority of music companies in the United States. (See Reply Affidavit, pp. 5–7.) However, our determination rests primarily upon the scope of business activity carried on in New York by Fred Rose, not upon its mode of execution. What is crucial and uncontroverted is that Fred Rose carries on a substantial portion of its business in New York as well as nationwide through the locally based offices of Fox, BMI and Chappell & Co. Regardless of the administrative character of these agents, their activities are systematic and continuous. They clearly could not be said to be independent contractors. Movant's cited cases, Buckley v. New York Times Co., 338 F.2d 470 (5th Cir. 1964), and Fandel v. Arabian American Oil Co., 120 U.S.App.D.C. 193, 345 F.2d 87 (1965) are therefore inapposite. Moreover, Fred Rose has regularly retained New York counsel and its president frequently visits New York to attend board meetings of the above named agents and confer with their principal executives. (See Affidavit in Opposition, pp. 5–9.) In light of these facts, it cannot be said that maintenance of the suit would offend the test of "traditional notions of fair play and substantial justice" as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

### III

■ The requisite personal jurisdiction having been established, service of process upon Fred Rose in Tennessee was proper. Service is sufficient if done in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held. Fed.R.Civ.P. 4(d)(7).

The applicable New York statutes provide in pertinent part that service may be made without the state in the same manner as service is made within the state upon any non-domiciliar who in person or through an agent transacts any business within the state. New York CPLR §§ 302(a), 313. The criteria of whether a foreign corporation is "doing business" within the state is no more exacting under the New York long arm statute than under the standards generally governing federal question cases. Manchester Modes, Inc. v. Lilli Ann Corp., 306 F.Supp. 622, 624 (S.D.N.Y. 1969). Moreover, the copyright statute which governs personal jurisdiction and venue in copyright actions, 28 U.S.C.A. § 1400, does not require a stronger finding of presence than is usually required to obtain jurisdiction over a corporate defendant. Boltons Trading Corp. v. Killiam, 320 F.Supp. 1182 (S.D.N.Y.1970).

### IV

■ Petitioner further contends that Randall Williams, Billy Jean Williams, and the Estate of Hiram Williams ("the Estate") are indispensable parties. We do not agree. Both Billy Jean Williams and Randall Williams, the decedent's alleged widow and son respectively, have assigned whatever renewal rights they may have had to the immediate parties to this controversy. There has been no suggestion that the transfer by either person was anything less than an assignment. The law is clear that an assignor of copyrights is not indispensable to a just adjudication of a suit

brought by the assignee. See Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). Moreover, the assignment is not denigrated if the transferor retains the right to periodic royalty payments. Hook v. Hook & Ackerman, Inc., 187 F.2d 52, 58 (3d Cir. 1951); Leesona Corp. v. Duplan Corp., 319 F.Supp. 223 (D.C.R.I.1970). Accordingly, the possibly adverse effect of judgment upon Randall Williams' right to receive royalty payments cannot affect our determination of his status as a party in interest.

■ Petitioner also argues that Billy Jean Williams is an indispensable party on the ground that the court must inevitably make a determination as to her marital status. That is not so. Indispensable parties are persons who not only have an interest in the controversy but whose interest is such that a final decree cannot be made without affecting that interest or if final determination in his absence will be ineffective or inconsistent with equity and good conscience. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 124, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967).

■ Though Billy Jean Williams admittedly has an interest in any judicial determination of her marital status, she has no material interest in the substantive issue of this controversy, the locus of ownership of the renewal copyright. Whatever interest she may have had in the renewal copyright has been assigned to plaintiff. (See Complaint, ¶ 9.) The act of assignment is not disputed by petitioner. Accordingly, whatever determination is made as to ownership of the renewal interest, Billy Jean Williams will not thereby be affected. Her absence would not hinder the Court from rendering an effective determination as between plaintiff and defendants. The issue at hand is not the validity of their respective assignments but rather the substance of the rights thereby assigned.

■ The indispensability of the Estate depends upon whether it has a colorable ownership interest in the renewal rights. Upon careful scrutiny of the moving papers, we find at this juncture that the Estate has no ownership interest in the renewal copyrights, all such interest having been transferred and assigned to Fred Rose (Frank Affidavit, para. 15; Williams Affidavit, p. 1). The administrator of the Estate has stated explicitly that in 1963 Randall Williams by his guardian assigned to Fred Rose all renewal rights in the compositions of his father (Stewart Affidavit, p. 3).

The administrator states in his affidavit that through the 1953 agreement with the Estate, Billy Jean Williams did release and assign "whatever interest (she) . . . might have had, might now have, or might in the future have in the renewal term of the copyrights of the Williams music." (See Stewart Affidavit, p. 2.) Assuming arguendo the validity of this assignment, our conclusion remains unchanged. As stated above, in 1963 Randall Williams assigned to Fred Rose his renewal rights. Under the law of Alabama, the state of administration of the Estate, and by admission of the administrator (Stewart Affidavit, p. 3) Randall Williams is the sole heir of his father. Moreover, petitioner claims that he is sole owner of the renewal right. Were petitioner to assert that an ownership interest resided with the Estate, it would defeat his substantive allegation.

Inasmuch as the Estate cannot stake a colorable claim on the basis of the agreement, it clearly is not an indispensable party to this action. An author's executors are entitled to claim the renewal copyright only if neither his widow (or widower) or children are deceased. 17 U.S.C.A. § 24. Here both the widow and son are alive and the immediate parties to the controversy assert their respective claims by assignments from them.

## V

■ While we find that this Court has jurisdiction over both the subject of the

controversy and the parties thereto, we conclude that the action should more appropriately be transferred to the Middle District of Tennessee. The locus of the action is in Tennessee and surrounding states and most of the witnesses who will testify as to the critical issue of marital status reside in this area (Frank Affidavit, pp. 7–9). Moreover, while we hold that Billy Jean Williams is not an indispensable party such that her absence would warrant dismissal, she does have a significant interest in the Court's determination of her marital status, and her presence may well facilitate the Court's decision.

Although plaintiff argues that transfer will inconvenience him, on balance it is clear that the action more appropriately belongs in the District Court of Tennessee. Accordingly, this action is transferred to the District Court for the Middle District of Tennessee.

So ordered.