**21-2174-cv**
*Peretti v. Authentic Brands Group, LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2021

Argued: April 8, 2022     Decided: May 4, 2022

Docket No. 21-2174-cv

VALENTINA M. PERETTI ACUTI, PAUL J. REITNAUER, III,

*Plaintiffs-Appellants,*

— v. —

AUTHENTIC BRANDS GROUP LLC, ABG EPE IP, LLC,

*Defendants-Appellees.*

B e f o r e:

LIVINGSTON, *Chief Judge*, LYNCH and LOHIER, *Circuit Judges.*

Appellants Valentina M. Peretti Acuti and Paul J. Reitnauer, III, heirs to the late songwriter and record producer Hugo Peretti, appeal from an order of the United States District Court for the Southern District of New York (Buchwald, *J.*) dismissing Appellants' action, which sought a declaratory judgment that

Appellants had validly terminated a 1983 grant of rights in the copyright to the hit song "Can't Help Falling In Love." The district court dismissed the action, holding that the grant, which transferred rights and interests held by the Peretti family in the renewal term of the copyright to Appellees' predecessors-in-interest, was not a grant "executed by the author" under § 203 of the Copyright Act of 1976 and therefore that Appellants had no statutory right to terminate the grant.

We agree with the district court. The termination rights in § 203 of the Copyright Act of 1976 apply only to grants executed by the author. While Hugo Peretti's signature is affixed to the grant document at issue, the interests at issue are the contingent rights held and transferred to the Appellees' predecessors-in-interest by Peretti's spouse and children, the grant of which was not and cannot be executed by the author. We therefore AFFIRM the judgment of the district court.

––––––––––––

ROBERT W. CLARIDA, Reitler Kailas & Rosenblatt LLP, New York, NY, *for Plaintiffs-Appellants.*

PETER ANDERSON (Adam I. Rich, Amanda Levine, *on the  brief*), Davis Wright Tremaine LLP, Los Angeles, CA, New York, NY, *for Defendants-Appellees.*

––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

This appeal concerns a dispute over the ownership of rights in the

copyright of "Can't Help Falling In Love" (the "Composition"), a well-known

ballad written by Hugo Peretti, Luigi Creatore, and George Weiss, and

popularized by Elvis Presley, in 1961. Plaintiffs-Appellants Valentina M. Peretti

Acuti and Paul J. Reitnauer, III (together, the "Perettis"), the surviving statutory successors to the late Hugo Peretti, brought this action for declaratory relief against Defendants-Appellees Authentic Brands Group, LLC and ABG EPE IP LLC (together, "Authentic Brands"), successors-in-interest to the parties to whom the Peretti family assigned their interests in the renewal term of the copyright to the Composition in 1983. They now appeal from an August 13, 2021 order of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *J.*) dismissing their claims.

The Composition was initially created, published, and registered as a copyright in 1961. In 1983, several years after the passage of the Copyright Act of 1976, Hugo Peretti, his wife, and his daughters signed a contract transferring their contingent rights and interests in the renewal term of the copyright of the Composition to Appellees' predecessors-in-interest (the "1983 Assignment"). Hugo Peretti died before those renewal rights vested, and his widow and daughters ultimately registered the renewal of the copyright in 1989. In 2014, Appellant Valentina Peretti Acuti, one of Hugo Peretti's daughters, and the late June Peretti, Hugo's widow, served a Notice of Termination on Authentic Brands purporting to terminate the 1983 Assignment under 17 U.S.C. § 203, which

3

provides a limited right to terminate such grants executed after 1978 by the author of a work. Authentic Brands disputed the effectiveness of the termination, and the Perettis, now the sole surviving statutory heirs of Hugo Peretti, filed suit in the Southern District of New York seeking a declaratory judgment that the termination was properly effectuated. The district court dismissed the claim, holding that the Perettis had no right to terminate the 1983 Assignment under § 203 because the 1983 Assignment was not a grant "executed by the author." The Perettis now appeal, arguing that the district court misinterpreted the text of § 203 and misapplied it in dismissing their suit for failure to state a claim.

We agree with the district court. Section 203 of the Copyright Act of 1976 applies only to grants "executed by the author on or after January 1, 1978." 17 U.S.C. § 203(a). An execution of a transfer of copyright ownership "is not valid unless an instrument of conveyance . . . is in writing and signed by the owner of the rights conveyed." *Id.* § 204(a). While Hugo Peretti's signature graces the 1983 Assignment, he cannot have executed a grant transferring rights, such as those owned by his family members, that he did not hold. Rather, his signature on the grant document transfers only his own contingent right to the renewal term, while his wife's and daughters' signatures transferred their respective contingent

4

rights. Because Hugo Peretti died before his contingent right vested, the rights transferred to Authentic Brands' predecessors-in-interest were the contingent rights held by his wife and daughters. We therefore conclude that the grants made by Hugo's wife and daughters in the 1983 Assignment are not grants "executed by the author" merely because Hugo Peretti's signature is found on the same grant document, and thus are not terminable under § 203. Accordingly, we AFFIRM the judgment of the district court.

## BACKGROUND[1]

In 1961, Hugo Peretti, along with co-composers Luigi Creatore and George Weiss, co-authored the Composition. Peretti and his co-authors registered the copyright to the Composition with the U.S. Copyright Office as an unpublished work on January 16, 1961 under Reg. No. EU 654415. A recording of the Composition, performed by Elvis Presley, was released on October 1, 1961 and quickly became a chart-topping hit. Peretti and his co-authors registered the

---

[1] The facts set forth below are drawn from the Complaint. For the purpose of a motion to dismiss, this court assumes all facts alleged in the Complaint to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

5

copyright to the Composition as a published work on December 11, 1961 under

Reg. No. EP158445.

At the time the copyright to the Composition was registered, the Copyright

Act of 1909 (the "1909 Act"), Pub.L. No. 60–349, 35 Stat. 1075, 17 U.S.C. § 1 et seq.

(Mar. 4, 1909), was in effect. Under the terms of the 1909 Act, authors were

entitled to an "original term" of copyright of 28 years beginning on the date the

work was published, and to the right to renew the copyright for an additional 28-

year "renewal term." This renewal right remained with the original owner of the

copyright, even if the owner had granted his rights in the original copyright term

to a publisher. The renewal term was intended to "permit[] the author, originally

in a poor bargaining position, to renegotiate the terms of the grant once the value

of the work ha[d] been tested." *Stewart v. Abend*, 495 U.S. 207, 218–19 (1990); *see*

*also Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 197 (2d Cir. 2008).

However, authors could, and often did, assign their contingent rights in the

renewal term to third parties prior to the expiration of the original term of

copyright. *See Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 657 (1943)

(holding that such grants were enforceable). Thus, under the regime of the 1909

Act, "[u]nless the author died before the renewal term began – in which case his

6

renewal rights vested in his statutory heirs, notwithstanding his assignment of an expectancy in those rights – a grant of renewal rights ensured that the publisher would own the copyright for the entire fifty-six-year period provided by the 1909 Act." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 20 (2015), citing *Steinbeck*, 537 F.3d at 197 (internal citation omitted). The 1909 Act did not provide authors or their statutory heirs with the right to terminate their grants.

In 1976, Congress created a new statutory scheme to govern copyright law – the Copyright Act of 1976 (the "1976 Act"), Pub. L. No. 94-553, 90 Stat. 2541., 17 U.S.C. § 1 et seq. The 1976 Act, which became effective on January 1, 1978, replaced the original and renewal term framework for copyrights with a unitary term of copyright, which, for works created after its effective date, consists of the life of the author plus an additional 70 years. For copyrights to works like the Composition, which were still in their original term as of the effective date of the 1976 Act, the Act preserved the renewal right but extended the renewal term. The original term would "endure for 28 years from the date it was originally secured," 17 U.S.C. § 304(a)(1)(A), and "the author of such work, if the author is still living, [or] the widow, widower, or children of the author, if the author is not living . . . shall be entitled to a renewal and extension of the copyright in such

7

work for a further term of 67 years." *Id.* § 304(a)(1)(C). As under the 1909 Act, the right to renew the copyright vests at the beginning of the renewal term in the author or his statutory successors, notwithstanding any transfer, assignment, or devise. *Id.* §§ 304(a)(1)(C); 304(a)(2)(B).

Unlike the 1909 Act, the 1976 Act provided for a limited right to terminate grants to third parties of rights in a copyright. This termination right served as a replacement for the reversionary right to renew, which would cease to exist for new copyrights, and once again gave the author of a work a second chance at bargaining over the value of his or her copyright. The statute sets out two different termination provisions, one applicable to those grants executed prior to the 1976 Act's effective date, and a second applicable to those grants executed thereafter. Section 304(c) allows for the termination of grants executed *before* the 1976 Act's effective date by authors and related non-authors, such as a surviving spouse or children. Where the author who made the grant is deceased, the author's termination interest passes to, and thus may be exercised by, his successors. 17 U.S.C. § 304(c)(2).[2] Section 203 provides for the termination of

[2] Section 304(c)(2) provides as follows:

> Where an author is dead, his or her termination interest is owned, and may be exercised, as follows:

grants executed *after* the 1976 Act's effective date, and is limited, by its plain language, to grants executed by the author.[3] It does not make any provision for the termination of grants executed after January 1, 1978 by related non-authors. However, as with pre-1978 grants, an author's termination interest passes to his

> (A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest.
>
> (B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them.
>
> (C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.
>
> (D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest.

[3] Section 203, which is titled "Termination of transfers and licenses granted by the author," provides as follows:

> (a) In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination under the following conditions . . .

9

successors upon his death. 17 U.S.C. § 203(a)(2).

In January 1983, after the passage of the 1976 Act and its effective date but prior to the expiration of the original term of the Composition, Hugo Peretti and Luigi Creatore negotiated an agreement with Julian J. Aberbach and Joachim Jean Aberbach (together, the "Aberbachs"), predecessors-in-interest to Authentic Brands, to administer the copyright of the Composition during its renewal term.[4] To deal with the reversionary nature of copyright renewal rights, which would pass to Hugo Peretti's statutory successors upon his death regardless of whether he had assigned rights to the renewal term to another party, the 1983 Assignment also included as transferors Hugo's wife, June Peretti, and his children, Valentina Peretti Acuti and Katharine Peretti Reitnauer. The 1983 Assignment, in relevant part, states that the transferors "hereby sell, assign, transfer and deliver to [the Aberbachs and their] successors and assigns, all of their right, title and interest vested or contingent in and to the United States renewal copyrights, and extension of renewal copyrights, of the Composition." J. App'x at 38-39. The 1983 Assignment was signed by Hugo Peretti, June Peretti, Valentina Peretti Acuti,

---

[4] Luigi Creatore and his wife and children conveyed their interests in a separate grant document; that grant is not at issue in this action. *See* J. App'x at 8.

and Katherine Peretti Reitnauer, as well as by the Aberbachs.

Per the 1976 Act, renewal rights to the Composition would not vest until the original term of copyright expired in 1989, 28 years after the copyright was initially secured. Unfortunately, Hugo Peretti died in 1986, three years before the end of the original term. In January 1989, Hugo's surviving co-authors, along with his successors (his widow June Peretti and his daughters Valentina Peretti Acuti and Katharine Peretti Reitnauer), registered the Composition's renewal copyright with the U.S. Copyright Office per 17 U.S.C. § 304(a)(2)(B).

While some things are meant to be, an amicable collaboration between the Perettis and Authentic Brands through the end of the renewal term was not. On August 14, 2014, Hugo Peretti's widow, June Peretti, and his daughter, Valentina Peretti Acuti, served a Notice of Termination on Authentic Brands (the "2014 Notice") purporting to terminate the 1983 Assignment under § 203(a)(3), which provides for the right to terminate a grant "executed by the author" at "any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant." 17 U.S.C. § 203(a)(3). The 2014 Notice stated that both Hugo Peretti and his other daughter, Katharine Peretti Reitnauer, had died; that "the Peretti termination interest is held by Mr. Peretti's widow June, his sole

11

surviving daughter [Ms. Peretti Acuti], and his grandson, Paul Reitnauer, the sole

child of his deceased daughter Katherine;" and that Valentina and June, who

"together . . . constitute more than one half of the Peretti termination interest,"

intended to terminate the 1983 Assignment effective as of February 1, 2018.[5] J.

App'x at 15-16. In August of 2016, Authentic Brands responded to the 2014

Notice, disputing its validity. The dispute over the validity of the 2014 Notice

continued through the purported effective date of termination, and in June 2020,

after the Perettis undertook to enter into an agreement with a new company to

administer their interest in the Composition's renewal copyright, counsel for

Authentic Brands re-asserted that the 2014 Notice was invalid and that all rights

in the copyright of the Composition remained with Authentic Brands.

On August 18, 2020, the Perettis commenced this action against Authentic

---

[5] The termination of a grant made by a single author under § 203(a)(1) can be effected by "the person or persons who . . . own and are entitled to exercise a total of *more than one-half* of that author's termination interest." 17 U.S.C. § 203(a)(1) (emphasis added). After Hugo Peretti's death, half of his termination interest would pass to his widow, June Peretti, and the other half would be divided between his daughters, Valentina and Katharine. *See* 17 U.S.C. §§ 203(a)(2)(A); 203(a)(2)(B). Since more than one-half of the Peretti family's termination interest would have been held by June and Valentina (on their theory that they took their termination interest from a grant made by Hugo, the author), no action by Paul Reitnauer would have been required to effectuate a termination under § 203(a)(1).

Brands, seeking a declaratory judgment that they had successfully terminated the 1983 Assignment. Authentic Brands moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In deciding the motion, the district court ruled that Hugo Peretti's contingent right to the renewal term of the Composition had extinguished upon his death in 1986 and did not transfer to the Aberbachs. Rather, the rights to the renewal term that were transferred were those of his widow and daughters, which had vested upon the expiration of the original copyright term. Accordingly, the district court held that because § 203 provides termination rights only to post-1978 grants executed *by an author*, Hugo Peretti's widow's and daughters' rights to the renewal term were not subject to termination under that provision of the 1976 Act.

Like a river flows surely to the sea, this appeal followed.

### DISCUSSION

We review *de novo* a district court's dismissal of an action for failure to state a claim under Rule 12(b)(6). *See Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012). Dismissal is appropriate where the complaint fails to set out a legal claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

13

570 (2007). In assessing the plausibility of the claim, "we must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Bldg. Indus. Elec. Contractors Ass'n*, 678 F.3d at 187, citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). When the district court's disposition "presents only a legal issue of statutory interpretation," this court reviews *de novo* whether the district court correctly interpreted the statute. *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 (2d Cir. 2020), quoting *City of Syracuse v. Onondaga County*, 464 F.3d 297, 310 (2d Cir. 2006).

This appeal, like the district court's dismissal, hinges on a single issue dispositive of the Perettis' claims: the meaning of the words "executed by the author," as they are used in § 203 of the 1976 Act. The task of interpreting the operative termination provision necessarily starts with the language of the statute. Section 203(a) provides as follows:

> In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, *executed by the author* on or after January 1, 1978, otherwise than by will, is subject to termination under the following conditions . . .

17 U.S.C. § 203(a) (emphasis added).

14

But what exactly is a grant "executed by the author?" The Perettis emphasize that Congress, in enacting § 203(a), chose to address grants "executed by the author" rather than grants "*made* by the author," or "*rights granted* by the author." Appellants' Br. at 15 (emphasis in original). Thus, the Perettis contend, all that is required for a grant to be "executed by the author" is the author's signature affixed to the grant document. That argument is not persuasive, however. The Copyright Act uses the word "executed," not the word "signed." Just as Congress could have chosen words that more emphatically convey the meaning favored by Authentic Brands, it likewise could have chosen words that would clearly convey the meaning favored by the Perettis, such as "any grant or transfer made in a document *signed* by the author."[6]

But we need not compare the words chosen by Congress to other words that hypothetically could have been used, because the term "execute" is explicitly defined in the 1976 Act. Section 204(a) of the 1976 Act, which is titled "Execution of transfers of copyright ownership," provides as follows:

> A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or

---

[6] Congress knows how to use the word "signed" when it wants to. Indeed, it uses that word several times in other parts of § 203. *See, e.g.*, 17 U.S.C. § 203(a)(4).

> memorandum of the transfer, is *in writing and signed by the owner of the rights conveyed* or such owner's duly authorized agent.

17 U.S.C. § 204(a) (emphasis added). Thus, the 1976 Act itself, in the statutory section immediately following the provision at issue, makes clear that the "execution" of a transfer of rights under the Act must be "signed by the owner of the rights conveyed." *Id.*

That meaning is consistent with the ordinary meaning of the word "execute" in legal contexts where that term is used in relation to transactional documents. Black's Law Dictionary, for example, states that to execute a grant is to "make [it] valid by signing; to bring [it] into its final, legally enforceable form." *Execute*, Black's Law Dictionary (11th ed. 2019). Ordinary dictionaries, including the one cited by the Perettis, *see* Appellants' Br. at 15, are to the same effect, defining "execute" in the relevant context as "to perform what is required to give validity to" a document, such as a deed. *Execute*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/execute (last accessed April 22, 2022). Anyone can affix his signature to a document purporting to transfer a right or piece of property, but only the signature of the owner of the right or property in question (or that of the owner's authorized agent) can "execute" the transfer,

16

because only the owner's consent can give "validity" to the transfer.

In short, a grantor cannot validly "convey more than he owns," *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007), and no grant document is valid simply because it is signed by someone. The signature that executes the transfer of a right, as made clear by § 204, is that of the owner of the right in question. We hold, therefore, that based on the plain reading of the statute, a grant "executed by the author" is a grant that is documented in writing, that is signed by the author, and that conveys rights owned by the author.

Turning to the grant at hand, the 1983 Assignment is a written agreement contemplating the transfer of a number of contingent rights held by the members of the Peretti family. Under the terms of the 1983 Assignment, the Peretti family transferred to the Aberbachs and their successors "all of their right, title and interest vested or contingent in and to the United States renewal copyrights, and extension of renewal copyrights, of the Composition." J. App'x at 38. Because, prior to the expiration of the original term of a copyright, "renewal rights [are] expectancies until the renewal period arrives," *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 377 (1960), the only vested right held by any of the Perettis at the time the 1983 Assignment was executed was Hugo Peretti's

17

interest in the Composition during its original term. Therefore, the 1983 Assignment transferred to the Aberbachs a bundle of unvested, contingent rights, consisting of Hugo Peretti's contingent right to renew, which was contingent upon his living to renew; June Peretti's contingent right to renew as Hugo's surviving spouse, contingent on Hugo *not* living to renew, June's living to renew, and June's remaining married to Hugo at the time of his death; and Valentina Peretti Acuti's and Katharine Peretti Reitnauer's contingent rights to renew as Hugo's surviving children, contingent on Hugo's not living to renew and both Valentina's and Katharine's living to renew. The document was signed by Hugo Peretti, June Peretti, Valentina Peretti Acuti, and Katherine Peretti Reitnauer, and each signatory thereby conveyed his or her own contingent rights to the Aberbachs.

Hugo Peretti's death in 1986, prior to the beginning of the renewal term, changed the bundle of rights conveyed by the 1983 Assignment in two fundamental ways. First, upon Hugo's death, his contingent right to renew the copyright of the Composition passed to his statutory successors, satisfying one of the contingencies to which their rights were subject. *See* 17 U.S.C. § 304(a)(1)(C). Second, because Hugo Peretti's contingent renewal right was extinguished on his

death in 1986, that right never vested, and his grant of that contingent right was ineffectual to transfer any rights to the assignees. *See Stewart*, 495 U.S. at 220-21 ("[T]he assignee of all of the renewal rights holds nothing upon the death of the assignor before arrival of the renewal period.") (emphasis and internal quotation marks omitted). In 1989, at the beginning of the Composition's renewal term, the contingent rights held by Hugo's widow and daughters in the copyright's renewal term vested and, per the terms of the 1983 Assignment, transferred to the Aberbachs. Thus, the Aberbachs ultimately took nothing from Hugo through the 1983 Assignment. *See* 3 Nimmer on Copyright § 11.03(A)(1)(c) (2021) ("In such circumstances [where the grantor of the renewal rights fails to survive until such rights vest], the renewal rights pass to the grantor's statutory successors and the original grantee takes nothing from the original grantor."). Those transfers that *were* effectuated by the 1983 Assignment were executed by June Peretti, Valentina Peretti Acuti, and Katherine Peretti Reitnauer, not by Hugo Peretti. Accordingly, they are not "grants executed by the author." We therefore hold, consistent with the district court's opinion, that the grants at issue are not terminable under § 203.

The Perettis contend that the grants by June Peretti, Valentina Peretti Acuti, and Katherine Peretti Reitnauer of their own contingent rights are not severable from Hugo Peretti's grant of his contingent rights in the renewal term, because the 1983 Assignment identifies the four Peretti signatories "*jointly and severally . . .* as 'Assignors'," J. App'x at 38 (emphasis added), and the document "does not make separate grants from each Assignor, but rather makes one grant on behalf of all of them, jointly and severally." Appellants' Br. at 8. Thus, the Perettis argue, every right transferred in the 1983 Assignment is a grant "executed by the author." In support of their proposition that a grant of rights in a copyright can be "joint and several," the Perettis point to § 203(a)(1), which provides for termination "[i]n the case of *a* grant executed by two or more authors of a joint work," 17 U.S.C. § 203(a)(1) (emphasis added), arguing that that provision illustrates that under the statute, multiple assignors can jointly execute a single grant of rights.

The Perettis' position is unsustainable. Per 17 U.S.C. § 204(a), a grantor can validly transfer only those rights that he or she owns. Hugo Peretti did not own the contingent rights held by his wife and daughters; thus, he cannot have executed a grant of their rights. If Hugo alone had signed a grant document

20

purporting to transfer only his wife's or daughters' contingent rights, such grant would not be valid under § 204(a) because Hugo did not own those rights. His signature on the grant document alone is insufficient to render the grant of another's rights one "executed by the author."

Moreover, § 203(a)(1) has no bearing on the situation at issue here, where multiple parties transfer their own, separate contingent rights. Section 203(a)(1) concerns the manner in which the termination rights of *authors*, who have executed an effective transfer under § 204(a), may be exercised. The first sentence of § 203(a)(1) covers grants executed by a single author. The second sentence, cited by the Perettis, creates a special rule for grants by joint authors, and permits termination of a grant by a majority of the joint authors who made it where those authors chose to convey their rights by a single grant rather than by separate grants. Neither sentence has any bearing on documents transferring the separate contingent rights of multiple parties, or purports to grant termination rights to statutory successors who transferred their own rights in a renewal term. The Perettis emphasize the wording of the second sentence, which provides for "*a grant*" executed by joint authors, and which the Perettis argue show that Congress "expressly contemplated that multiple assignors might . . . 'execute' . . .

a single grant." Appellants' Br. at 16. But because § 203(a)(1) contemplates the existence of a single grant executed by *two or more joint authors*, each joint author executing such grant necessarily holds and owns the same underlying rights in the copyright, as those are the rights derived from joint authorship. No signatory to the kind of multi-party grant contemplated by § 203(a)(1) is signing away a right he or she does not individually own, which is what the Perettis argue Hugo Peretti accomplished by signing the 1983 Assignment.

The Perettis compare this case to *Scorpio Music, S.A. v. Willis*, 2012 WL 1598043 (S.D. Cal. May 7, 2012), where the district court analyzed a multi-party grant in determining terminability under § 203. But *Scorpio Music*, an out-of-circuit district court decision that is in any event not binding on this court, is clearly distinguishable. The dispute in *Scorpio Music* involved separate grants, one signed by a single author, Willis, and one signed by his two co-authors, granting their rights in the copyrights of a series of hits for the Village People to Scorpio Music, a music publisher. Willis served a notice of termination under § 203, which plaintiff Scorpio Music asked the court to declare invalid because the other co-authors had not joined in the termination, as Scorpio Music contended was required under § 203(a)(1). However, the district court ruled

against Scorpio Music, finding that Willis could terminate his separately-executed grant without majority consensus from his co-authors because he had not executed a joint grant with his co-authors as contemplated by § 203(a)(1).

The Perettis characterize the holding thus: "The termination analysis for multi-party grants, such as the 1983 [Assignment] here, properly hinges directly on whether the signatories 'executed' a single grant, or multiple separate grants." Appellants' Br. at 18. But that is not what *Scorpio Music* instructs. First, *Scorpio Music* grappled with a specific statutory provision addressing jointly-executed grants by co-authors. No statutory carve-out exists for jointly-executed grants by authors and their statutory successors. Second, the Perettis' analysis necessarily ignores that a jointly-executed grant by co-authors who *all* share an interest in the right conferred is different from a jointly-executed grant by family members who *do not* jointly hold any of the interests being conferred. In clear contrast to the scenario in *Scorpio Music*, Hugo's signature on the 1983 Assignment "executed" the transfer of his rights, and only his rights, to the Aberbachs. The transfer of rights held by June Peretti, Valentina Peretti Acuti, and Katherine Peretti Reitnauer cannot have been grants "executed" by Hugo Peretti where he was

23

not, and never had been, the owner of the rights conveyed. The plain meaning of grants "executed by the author" is an author's grant of his or her own rights.

The Perettis next argue that this interpretation of § 203 is erroneous because it reads out of existence § 203(a)(2), a provision of § 203 which provides that an author's termination rights survive him and pass to his statutory successors. The Perettis contend that our interpretation of § 203 would mean that "the author's termination interest dies with him or her, and the later-named statutory beneficiaries are just out of luck if that death occurs at an inconvenient time." Appellants' Br. at 22. But that argument misunderstands our (and the district court's) reasoning. Contrary to the Perettis' contention, Hugo Peretti's right to terminate his grant to the Aberbachs did not die with him. If, for example, Hugo had lived to 1989 and renewed his copyright, his termination rights would have passed to his successors even if he then died before the end of the termination period set out by § 203(a)(3). Here, however, because Hugo's contingent rights in the renewed copyright failed to vest and his grant expired before those rights could be transferred to the Aberbachs, there is no grant "executed by the author" for the successors to Hugo's § 203 termination rights to terminate.

As Professor Nimmer explains:

> An author's spouse or children may also execute, on or after January 1, 1978, a grant of contingent renewal rights in such a work. Such a grant would not be subject to termination because it was not executed by the author. If the renewal rights vest in the surviving spouse and children (because the author has died prior to the expiration of the first twenty-eight-year term), their prior grant of such renewal rights will effectively deprive them of any future interest in the work. They may not thereafter claim termination of the deceased author's original grant because it will have previously terminated by operation of law; the effectiveness of the author's grant beyond the first copyright term was contingent upon the author's survival.

3 Nimmer § 11.02; *see also Peretti Acuti v. Authentic Brands Grp. LLC*, 2021 WL 3604382, at *4 n. 6 (S.D.N.Y. Aug. 13, 2021) ("[W]hile Hugo's successors may 'own' his termination interest after his death pursuant to 17 U.S.C. § 203(a)(2), because the author's grant had expired, there is no grant to terminate, and the termination interest is likewise voided."). Had a vested right belonging to Hugo Peretti been validly transferred to the Aberbachs and their successors prior to his death, the Perettis would have retained the ability to terminate any grant of those rights under § 203(a)(2). Our reading of § 203 does not undercut the statutory language, because it does not necessitate the conclusion that the termination right outlined in § 203 cannot survive the author.

Finally, the Perettis argue that our interpretation of § 203 contravenes Congress's intent in creating a termination right when it passed the 1976 Act. Specifically, the Perettis contend that our holding, which prohibits them from terminating their grants on the sole basis that the grant document was signed by Hugo Peretti, "does violence to the clear and explicit policy choices of Congress, as set forth in the legislative history of § 203(a), namely, to benefit authors and their statutory heirs against transfers that did not recognize the true long-term value of the works at issue." Appellants' Br. at 25. The Perettis point out, and numerous courts have observed, that the termination provisions of the 1976 Act were intended to protect authors and their heirs from unequal bargains entered into due to the sheer impossibility of estimating the future value of a newly-created work. *See Stewart*, 495 U.S. at 218–19.[7] Our reading, the Perettis argue, undermines that Congressional intent.

But while the statutory provision of termination rights was indeed

---

[7] Wise men say only fools rush into assignments of valuable copyright interests, but the Perettis were not foolish, and they did not rush into an agreement to transfer years of future rights in exchange for a one-time, minimal cash payment. The 1983 Assignment guaranteed the Perettis a continuing stream of royalties derived from income generated by the Composition through the end of the renewal term, and was negotiated only after the Composition had established its popularity and staying power over the span of more than two decades.

intended to benefit authors and their heirs, it does not follow that such purpose requires interpreting every provision relating to termination rights in whatever way would best favor the interests of heirs, regardless of the clarity of statutory language to the contrary. "No law pursues just one purpose at all costs," *King v. Burwell*, 576 U.S. 473, 512 (2015) (Scalia, *J.*, dissenting), and individual provisions of statutes that may appear inconsistent with the broad purpose expressed by Congress may instead reflect the limits of such a purpose in the face of the multitude of interests that must be accounted for in any complex statutory scheme, such as that governing the laws of copyright.

In this case, as demonstrated above, the statutory language is clear. Moreover, the context of the provision confirms that Congress made a deliberate choice not to provide for termination rights in the situation at hand. The 1976 Act draws a clear distinction between grants executed before and after its effective date: Grants executed after the effective date are governed by § 203, a provision that does not provide for termination rights to successors who themselves transferred their rights, while grants made before the effective date are governed by § 304(c), a provision that explicitly provides for such rights. *See Steinbeck*, 537 F.3d at 199-200 ("It is worth noting that section 304(c), by its terms, does not

27

apply to grants of a transfer or license of the renewal copyright made on or after January 1, 1978. Such grants are subject to the slightly different termination right provided at 17 U.S.C. § 203, which, among other distinctions, applies only to grants made by the author rather than to grants made by either the author or other parties."). The Perettis argue that drawing such a hardline distinction between the termination rights of non-author grantors for pre- and post-1978 grants is inexplicable in light of what they characterize as Congress' broad intent to protect authors and their heirs. *See generally* Appellants' Br. at 24-26. Even if it is unclear *why* Congress chose to extend this protection to statutory successors only if their grants were made before the effective date of the 1976 Act, it is nevertheless incontrovertible that Congress *did* make that policy decision, and it did so clearly and explicitly. Furthermore, the Perettis' argument would raise the same kind of perplexing policy considerations. For example, the Perettis' interpretation of § 203, which hinges on the fact that Hugo Peretti's signature appears on the same document by which his family members conveyed their contingent rights, would lead to the absurd conclusion that whether post-1978 non-author grantors have the right to terminate a grant of their own rights hinges on whether their grant, and signature, appears on the same document as that of

the author. As the Perettis concede, under their interpretation, if the same transaction had been effectuated using separate documents, simultaneously executed by each family member at a single closing, they would have no claim to termination rights. A complex statute like the 1976 Act may at times create apparently anomalous results, but the Supreme Court has recently reaffirmed that we must adhere to the text of the Copyright Act, "even if the statutory scheme has not worked as Congress likely envisioned." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019). As we have discussed at length, the text plainly leads to the result directed by the district court, and provides no support for the Perettis' contrary interpretation.

Finally, if there were any remaining ambiguity as to Congress's intentions in crafting the language of § 203 – and we believe there is none – such doubt would be dispelled by the legislative history of the 1976 Act. The Perettis' proposed reading would, as the court below aptly noted, "plainly undermine the conscious decision of Congress to establish separate termination regimes for grants of copyright interests made before and after the effective date of the 1976 Act." 2021 WL 3604382 at *5. The members of Congress who enacted the 1976 Act had before them a comprehensive House Report, echoed by a similarly

29

comprehensive Senate Report, on the 1976 Act. Both Reports emphasized the difference between § 304(c), which explicitly provides for terminations of grants "executed by a person or persons other than the author," and § 203, which is limited to grants "executed by the author." The Reports advise, in relevant part:

> Under section 203(a) the right of termination would apply only to transfers and licenses executed after the effective date of the new statute, and would have no retroactive effect. The right of termination would be confined to inter vivos transfers or licenses executed by the author, and would not apply to transfers by the author's successors in interest or to the author's own bequests . . .

> Instead of being limited to transfers and licenses executed by the author, the right of termination under section 304(c) also extends to grants executed by those beneficiaries of the author who can claim renewal under the present law: his or her widow or widower, children, executors, or next of kin. . . .

> Under section 203, an author's widow or widower and children are given rights of termination if the author is dead, but these rights apply only to grants by the author . . . .

H.R. Rep. No. 94-1476 at 124-125, 140 (1976); *see also* S. Rep. No. 94-473 at 108, 123-24 (1975) (same). The Reports thus call the members' attention to the fact that the proposed bill, despite its purpose to protect authors and their successors from unfair bargains, did not extend to an author's heirs making a post-1978 grant of their contingent rights under a renewal term of a pre-1978 copyright the same

30

terminations rights as an author making such a grant, or of statutory successors who had assigned their rights before the effective date of the 1976 Act.[8]

When the Peretti family effected the 1983 Assignment, 20 years had passed since Elvis Presley rode the Composition to the top of the charts, and over 100 versions of the song, vocal and instrumental, had been issued, by artists ranging from Wayne Newton and Doris Day to Marty Robbins and Bob Dylan.[9] There is no plausible argument that the Perettis did not understand the value of the Composition at the time that they entered into the 1983 Assignment. Perhaps the Peretti family could have negotiated a better deal in 1983. But the statute does not give the Perettis the right to do so now, and requiring them to comply with the

---

[8] There is nothing novel, moreover, about recognizing the distinction between author grantors and non-author grantors in determining whether the termination of a post-1978 grant is valid under § 203 of the 1976 Act, as we have done in prior cases. *Compare Steinbeck*, 537 F.3d at 199-202 (holding that, because a 1994 agreement executed by Steinbeck's widow for continued publication of Steinbeck's work "cancelled" Steinbeck's original, pre-1978 grant, Steinbeck's surviving sons held no termination right under § 203) *with Baldwin*, 805 F.3d at 33 (holding that, because the effective grant of rights to "Santa Claus is Comin' To Town" was a grant executed by the author in 1981 rather than a grant executed by the author in 1951, his statutory successors were entitled to terminate his grant pursuant to § 203).

[9] *See Can't Help Falling in Love*, SECONDHANDSONGS, https://secondhandsongs.com/work/175/versions (last visited April 22, 2022) (cataloguing covers of the Composition). The website lists a total of 566 versions to date, including performances in numerous other languages, including Latin.

contractual grant of their rights is consistent with both the intent behind § 203

and its plain language.

## CONCLUSION

We have considered Appellants' remaining arguments and find them to be

without merit. For the reasons set forth above, we conclude that the transfer of

the Perettis' rights in the renewal term of the copyright of the Composition to

Appellees, as memorialized in the 1983 Assignment, is not a grant "executed by

the author" and the district court did not err in dismissing Appellants' action for

a declaratory judgment. The judgment of the district court is therefore

**AFFIRMED**.